## The Newville Road Case.

The jurisdiction of the quarter sessions over the laying out of roads, obtains within the limits of a borough, unless it be excluded by the charter of incorporation.

An order to view and vacate a public road is not a matter of right in the petitioners, but of discretion in the court of quarter sessions.

The land occupied by a public road, is a legitimate subject of consideration on assessing the damages sustained by the owner of the soil.

The circumstance that the owner of land through which a public road has been opened, was a petitioner for the appointment of viewers, does not preclude him from claiming damages for injury done to him by reason of the opening of the road.

In the case of a report having been made of the amount of damage sustained by an individual, by reason of the opening of a public road through his lands, the court have no power to grant a review.

CERTIORARI to the quarter sessions of *Cumberland* county.

Case of the road from the brick school house on Corporation street, in the borough of Newville, to the Cumberland·Valley rail road, near where the said road crosses the Big Spring, in Newton township, Cumberland county.

On the 9th of August 1836, the petition of the inhabitants of the borough of Newville, was presented to the court of quarter sessions of Cumberland county, praying the court to appoint six reputable freeholders to lay out a public road, commencing as near as may be to the brick school house on Corporation street, in said borough, and thence to a point at or near where the rail road shall cross the Big Spring, on the west side of said spring. The petition was signed by twenty-six petitioners, of whom John Johnston was one.

On the same day the court appointed six viewers, four of whom, on the 19th of November 1836, reported that they had viewed the ground proposed and laid out a road for public use, which was particularly described in their report by courses and distances, and also by a plot or draft annexed. It also appeared by their report, that five of the viewers had viewed the ground. This report, on the same day, was approved *nisi*, and on the 12th of January 1837, the following order was made: " The within report being read in the manner and at the times prescribed by law, the court approve of and confirm the same road for public use; and order that it be entered of record, and be taken, deemed and allowed to

[The Newville Road Case.]

be a public road or highway; and the court further direct, that the said road shall be opened of the breadth of fifty feet, agreeably to the courses and distances aforesaid, of which the supervisors of the highways of the townships through which the said road passes, are to take notice and govern themselves accordingly.— By the court."

And an order issued to open said road.

On the 13th of April 1837, the petition of Paxton & Galbraith was presented representing that the aforesaid road (particularly designating the same) "is laid out and opened through the lands of your petitioners and occupies between two and three acres thereof, and has destroyed valuable timber growing thereon," and praying "the court to appoint proper persons to view the premises and assess the damages, if any, which petitioners may have sustained."

On the same day the petition of John Johnston, who was one of the petitioners was presented to said court, representing that the aforesaid road (particularly designating the same) " passes through the land of petitioner in such a way as to do him great injury, by the appropriation of his land a width of fifty feet, and making the remainder of his ground into such a shape as to make it of much less value," and praying "the court to appoint six disinterested persons to view the premises, and ascertain and report the damages which he has sustained by reason of the location and opening of the said road."

On the same day the court appointed Josiah Hood, Peter Wilt, David Palm, John Dunlap, James Montgomery and Samuel Irvine, viewers in the above cases.

In the case of Paxton & Galbraith the viewers reported as follows: " We, the within named viewers, met agreeably to order, and all being duly sworn by James Kennedy, Esq.; and having viewed the ground and duly considered the advantages that might arise to the owner of the land through which said road is laid out, do report, that we find for your petitioners the sum of 150 dollars damages, and all legal costs."

In the case of John Johnston they reported as follows: " We, the within named viewers, met agreeably to order, and all being duly sworn by James Kennedy, Esq.; and having viewed the ground and having duly considered the advantages that might arise to the owner of the land through which said road is laid out, do report, that the actual damages to the petitioner, we find to be 110 dollars and all legal costs.

On the 17th of August 1837, the reports came before the court. At the same time a petition of the inhabitants of the borough of Newville and townships adjacent was presented, setting forth that the aforesaid road (particularly designating the same) " as laid out and opened, is entirely useless and inconvenient and burdensome," and praying the court to appoint suitable persons to

view said road, and vacate the same should they deem it expedient and proper so to do. The petition was signed by forty-eight petitioners, of whom were Peter Wilt, John Dunlap, James Montgomery and Samuel Irvine, four of the viewers in the case of the damages.

At the same time, to wit, 17th of August 1837, petitions were presented by the commissioners of Cumberland county, for reviews in the aforesaid cases of damages. The petitions set forth that "the damages were excessive, and more than the county of Cumberland should reasonably pay," and praying the court to appoint suitable persons to view the land, &c., and report what damages, if any, were sustained, &c.

Upon these reports, petitions and proceedings, the court made the following decree in writing:

Reed, president.—"Application to confirm the report of viewers to assess damages, objected to, and a view applied for by the commissioners of the county; the review objected to, not being allowed by the act. Petition also for a view to vacate the road; objected to the appointment of reviewers; it was only recently confirmed and opened; it is in the discretion of the court to grant or not, &c.

"A view for a road or a view to vacate a road, is not imperative; it is only to be done as often as it seems needful. Here this road was confirmed in January and opened since; no review was applied for; this is full evidence that it is not needful to vacate it. If the objectors refused or neglected to proceed by review at their own expense, which they had a right to demand, we will not suffer them to lie by till confirmed and opened, and then immediately to apply for a new view. The petition is rejected. The words of the act are, if the road shall become useless, &c. It cannot have become so since it was opened. The objection is to the original laying out of the road, not to any thing since it was laid out.

"We confirm the report for damages and refuse a review; there is no evidence on the subject," &c.

Exceptions:

1. The court of quarter sessions have no authority to lay out a public road in the borough of Newville.

2. They erred in refusing to appoint viewers to view and vacate said road.

3. They erred in appointing viewers to assess damages on the petitions of Johnston and Paxton & Galbraith, because no injury is set forth in the petitions which is the subject of compensation out of the county funds.

4. The report of viewers is radically defective.

5. John Johnston, who was a petitioner for the road, can not recover damages for laying out and opening the same road.

6. The court erred in refusing reviews upon the petitions of the commissioners of Cumberland county, and confirming the report of viewers.

[The Newville Road Case.]

Graham, for plaintiff in error.
Biddle and Watts, contra.

The opinion of the Court was delivered by

SERGEANT, J.—This case was removed here by *certiorari*, from the court of quarter sessions of Cumberland county. Several exceptions have been taken to the proceedings in the court below.

1. The first exception is, that the court of quarter sessions have no authority to lay out a public road in the borough of Newville. The question depends on the construction of the act of assembly of the 26th of February 1817, to incorporate the town of Newville. Unless there is some provision in that act, restricting the powers of the court of quarter sessions under the general road laws, so far as respects lots or lands in that borough, the jurisdiction of the court continues. Upon comparing the language of this act with that used in the act for incorporating the town of Mercer, there appears to be no substantial difference between them, and the point has, therefore, been already decided by this court, in the case of the road through the borough of Mercer, 14 *Serg. & Rawle* 447, in which it was held that the court of quarter sessions possessed the power to lay out and open roads through the borough lots. Great inconvenience might arise if the court of quarter sessions had not this power; for without such an authority, it does not appear that any new road could be laid out at all, notwithstanding the necessity that is likely to arise from time to time by the increase of population in boroughs and counties; especially as many of these boroughs comprehend large tracts laid out in outlots, often embracing a circuit of several miles. It is clear that the charter of this borough, as well as similar ones, confers only the power to regulate, repair, preserve, and maintain roads and streets, and not to lay them out and open them; and this system, is adopted by the legislature in the new act of the 1st April 1834, in relation to boroughs thereafter to be incorporated. The eighth section gives power to the town council to regulate, improve, repair, and keep in order, the roads, streets, lanes, alleys, and other public grounds, wharves and landings within them, but declares that nothing therein contained shall be construed to give to the town council authority to lay out any road, street, lane, or alley, within the borough limits, but such authority shall be vested in the court of Quarter Sessions of the proper county, under the general road laws of the commonwealth. The case of the Easton road, 3 *Rawle* 194, has been relied on by the complainants. But in that charter the language was peculiar; it was a special act, which was considered by the court as expressly repealing the general road law, so far as respected the borough of Easton, and therefore as restricting the authority of the court of quarter sessions, and giving exclusive powers to the local authorities. No language is to be found in the act incorporating the town of Newville, like that contained in the act relative to the borough of Eas-

ton, and that case is distinguishable from the present.    We therefore think this exception not sustained.

2. The second exception is, that the court erred in refusing to appoint viewers to view and vacate the said road.

It appears by the record that on the 9th of August 1836, certain inhabitants of Newville petitioned for viewers to lay out this road, who reported in favour of it, on the 19th of November 1836, and on the 12th of January 1837, the court confirmed the report, and directed the road to be entered of record and opened, and an order was issued to open it.    On the 13th of April 1837, two petitions were presented for the assessment of damages by jurors, who were appointed, and returned assessments of damages in favour of the respective petitioners.    On the 17th of August 1837, when these reports of damages came before the court, a petition of forty-eight of the inhabitants of Newville and townships adjacent, was presented, setting forth that the road " as laid out and opened, is entirely useless and inconvenient, and burthensome, and praying the appointment of persons to view said road, and vacate the same, should they deem it expedient and proper so to do."    This the court refused to do.

The act of 13th of June 1836, section 18, provides, that "the court of quarter sessions shall, within their respective counties, *have authority*, upon application to them by petition, to inquire of, and to change or vacate the whole or any part of any private or public road, which may have been laid out by authority of law, whenever the same shall become useless, inconvenient, or burthensome, and the said courts shall proceed therein by views and reviews, in the manner provided for the laying out of public roads and highways." It was, no doubt, upon this section the petitioners proceeded.    On examining, however, the language of this section and the succeeding ones, and comparing them with other sections of this act, it seems clear, that it is in the discretion of the court to grant the view, and not compulsory.    Section 19 declares, that roads laid out and confirmed as aforesaid, but not opened, *may be* vacated and annulled, on the petition of a majority of the original petitioners for the road.    Section 20 says *the courts shall also have power* in the manner aforesaid, to change or supply by a new road, the route of any state road.    By section 21, the said courts, respectively, *shall also have power* to vacate any part of a state road, &c.    Whereas in the case of petitions to lay out a road, section 1, the courts shall have power, and *are hereby required* to grant a view.    And by section 7, on petition of the owner, the court *shall appoint* six disinterested persons to view the premises and assess the damages.    The court had, therefore, a right to refuse to appoint viewers to vacate the road, if, in their opinion, the circumstances were such as to render it improper.    This road had just been laid out, and opened, the report of damages had not even been finally disposed of; no experiment could have been made, by which it could be ascertained

satisfactorily, that the road had become useless, burdensome, and inconvenient, and the parties opposed to the road had omitted to proceed by the ordinary course of a review, to ascertain whether the road was wanted, and to have it vacated before it was opened, but laid by until the road was opened, and the persons through whose grounds it ran, had a claim for damages—certainly the act of assembly was not intended to apply to a case of this kind. The object was to get rid of roads that had by process of time and change of circumstances, become useless and burthensome to the public; But of these and other reasons, the court below was, in the first instance, the judge, and we would not inquire into the exercise of their legal discretion, unless in a very strong case. This exception is, therefore, not supported.

3. The third exception is, that the court erred in appointing viewers to assess damages on the petition of Johnston, and of Baxton and Galbraith, because no injury is set forth in the petitions, which is the subject of compensation out of the county funds. The petition of Johnston sets forth, that the road passes through his land in such a way as to do him great injury, by the appropriation of his land in width fifty feet, and making the remainder of his ground into such a shape as to make it of much less value. The 7th section of the act of 13th June 1836, enacts, that the owner may, within one year, apply by petition, setting forth the injury which he or she may have sustained thereby, and the persons appointed are to view the premises and assess the damages, if any, which the petitioner may have sustained. The 9th section provides, that in assessing the damages, the viewers shall take into consideration the advantage derived from such road passing through the land of complainant. Whatever may be the nature of the loss or damage which the owner of the land sustains by the road passing through his land, he is to be compensated for it, and it cannot be pretended, that occupying his land for a public road and lessening the value of the remainder, is not a damage to him. It is unnecessary to inquire what might be the right of the commonwealth to take the land of individuals for public highways, without making compensation, under the original reservation of six acres in every hundred for roads, &c. It is sufficient to say that they have not chosen to do so, but have directed compensation to the owner, since the year 1700, for taking improved land; and by the general road law prior to the present, as well as the act of 1836, have awarded compensation for whatever damage or injury he may sustain—not for the soil itself, because that is not taken, but only a right of passage. And the viewers are presumed to have taken into consideration, as it was their duty to do, as well the possibility of the road reverting back to the proprietors, by being vacated at some future day, as the rights left to him under and over the highway, in subservience to the public passage, and also the advantages derived by the owner, from the road passing through his premises,

[The Newville Road Case.]

which, in some instances, makes the residue more valuable than the whole was before, and in most cases, gives increased value to the remainder. In some instances, however, the total value may be lost. These are considerations which the jury ought carefully to weigh in assessing the damages, and which it must be presumed they gave due weight to in the present instance. The same remarks apply to the petition of Paxton & Galbraith, which states that the road occupies three acres of his land, and has destroyed valuable timber growing thereon. We are, therefore, of opinion that this exception is not supported.

4. The fourth exception is, that the report of the viewers is radically defective. The report, however, is in the accustomed form, and complies with the language of the act of assembly. No defect has been pointed out.

5. The fifth exception is, that John Johnston, who was a petitioner for said road, cannot recover damages for laying out and opening the same. It has never been considered that a person by signing a petition for a public road which should pass through his land, was precluded from recovering damages, or that he thereby released them. By the act of 1836, owners of land generally, are embraced, and none are excepted. Though the proceedings may take place on the request of such person, yet the road is made for the accommodation of the public at large, and it is but reasonable they should bear the loss incurred thereby. It might, perhaps, be an argument before the jury who assess the damage, to show that such individual's damage was little or nothing; yet, perhaps even that would be doubtful unless the motive were known—but it does not seem to exclude the party from the benefits of the law.

6. The sixth exception is, that the court erred in refusing reviews upon the petition of the commissioners of Cumberland county, and confirming the report of viewers.

This is a question as to the proper construction of the recent road law of the 13th of June 1836, whether, after a view and assessment of damages to the owners of the land through which the road passes, the court are bound to grant a review for the purpose of another assessment. The complainants rely on the general expressions contained in the 25th section of the act. "In all cases of views for any purpose mentioned in this act, the respective courts shall, on petition of any person interested, direct a second view or review for the same purpose: provided, that application therefor be made at or before the next term of the said court, after the report upon the first view." If this act bears the construction contended for, it seems not only to be novel in its provisions, but also attended with so many inconveniences that it is difficult to believe it could have been the intention of the framers of this act. No reason can be suggested why a second assessment of damages should take place whilst the former assessment remains in full force and effect; and if a new assessment is to be made, it may be questioned which

is to be taken as the sum due; or if not, who is to choose between them? If the right exists in the county commissioners or any other person, to have a review of every assessment of damages for roads, it is to be feared that it would degenerate into a source of great expense and litigation in the different counties, and the object of the law, which is to have these damages speedily adjusted, and paid over, would be in a great measure defeated. An adequate remedy is given to all parties interested by the power possessed by the court to disapprove and set aside the assessment for any impropriety in the jury or defect in the proceedings, and to award another view in lieu of the former. On carefully examining, however, the whole of the provisions of this act, I am satisfied that the right to a review does not extend to the case of assessment of damages. In the first place, the act of the jury in these cases is not so much that of viewers, (though they are directed to view the premises, and are frequently termed viewers,) as that of assessors of damages, which is the great object of their appointment and their main business. And in the 80th section of the act this distinction is apparent, where it speaks of "all cases of view, review, or assessment of damages." But, what is still stronger, the 54th section provides for the expense both of views and reviews of roads, whether public or private; and the 55th section provides for the expense of a view to assess damages occasioned by a public or private road, but says nothing of the expense of a review for that purpose, which it is not to be supposed would have occurred had such a thing been intended. There is, therefore, as the law stands, no provision for paying the expense of such review. Considering these circumstances, and the manifest uselessness as well as the inconveniences of such a proceeding, we think the court below were right in refusing to grant a review, or rather a second assessment of damages.

Proceedings confirmed.