## In re MILFORD.

Under the general road law, the Quarter Sessions has not jurisdiction to lay out and open streets and alleys on the site of streets and alleys laid out by the original proprietor of an incorporated borough in the plan of the town, which have not been opened.

CERTIORARI to the Quarter Sessions of Pike county.

*Dec.* 21. In 1833, a petition was presented to the court below, stating the petitioners' inconvenience, &c., for want of streets and alleys in the town of Milford, (as designated and laid down in the plan of said town by the original proprietor, a plan whereof was annexed,) declared public roads or highways, and praying the appointment of persons to view and lay out the same. The order directed the five viewers to view, &c., and if they should agree "there is occasion for such streets and alleys being opened, they shall proceed to lay out the same agreeably to the original plan of said town," and make report. In January, 1834, four of the viewers reported they had viewed, laid out, and returned for public use, the following streets and alleys, "beginning at the south-west end of Sixth street, thence to High street, thence up High street to Seventh street, thence up Seventh street to the north-east corner of the town; thence down Elizabeth street to Gooseberry alley, thence up Gooseberry alley to Hartford street." Several other streets were laid out by similar references to streets by name, "and also a public square, a plot or draft whereof is annexed." In April of the same year, the report was confirmed. In 1844, the supervisors having

been requested to open certain of these streets. and alleys, a case was stated for the opinion of his honour JESSUP, P. J., whether the proceedings are valid, and would justify the said supervisors in opening the streets and alleys.   His honour was of opinion, that the order was binding and in full force, and that the Court of Quarter Sessions could not now reverse or dispute its validity, and that it was sufficient until reversed to justify the supervisor.   The party over whose land the streets and alleys ran, sued out this writ.

*W. A. Porter*, in support of the exceptions.—The proceedings having been commenced and concluded under the former law, (act of 1802, 3 Smith, 512,) that alone is to be the rule of decision.   It is very obviously not adapted to streets and alleys of a town, but was intended to apply merely to a single road in the country, and this seems to be decided in the case of the Easton Borough, 3 Rawle, 195, though there was a special jurisdiction created by the charter. ROGERS, J.—I think the court has jurisdiction, or it would reside nowhere, and that is the spirit of the decision in 3 Rawle.   BELL, J.— The great objection is, there is no discretion given to the viewers. [ROGERS, J.—It is more like an order to open than to lay out and open.   COULTER, J.—A case at Lancaster decides this; it was there held, that no discretion being given, the proceeding was bad.] These-are among the many objections to this proceeding.   There is another; it nowhere appears, that the five viewers viewed as they are ordered.   [BELL, J.—That would have been fatal below, but it is a matter of fact for that court.]

The courses and distances are not given, and this is fatal; 3 Binn. 3; for the supervisor acts at his peril.   There is no reference to improvements, and they will be presumed to exist in a town.   Buttonwood Road, 13 Serg. & Rawle, 445.   The record was not made as directed, and the breadth is not given.   [BELL, J.—There may have been a standing order on that subject.]

The court declined hearing *J. M. Porter* on the same side, and no one appeared on the other side.

*Jan. 2.*   PER CURIAM.—The general road law on which this proceeding is attempted to be supported, provides for the laying out and opening of one road at a time in a continuous line with one place of beginning and one terminus.   The road before us, as it is called, consists of many parallel roads, and many more cross ones surrounding entire squares, and having many endings and beginnings.   It is, in fact, a dislocated fragment of the plan of an incorporated borough, which is the seat of justice of a county.   And why should

the road law be applied to streets and alleys which are already laid out by competent authority, and which can gain no additional sanction from it? The authority of the owner of a town plot to dedicate his ground to public use is as effective as that of the legislature. It was determined in the Newville Road case, 8 Watts, 172, that the road law is not necessarily suspended within the limits of a town by the incorporation of it; but no one would pretend that it could be applied to the opening of its streets or the vacating of them, or consequently to the laying of them out a second time. It would be preposterous in the Quarter Sessions to entertain a petition for a public highway along the middle of Market street, in Philadelphia, from the Schuylkill to the Delaware; yet along the middle or some other part of the street, it would have to be laid, if at all, for the breadth of a township road is limited to fifty feet. The object of the present proceeding is, perhaps, to have the unoccupied streets of the borough opened at township expense, which would be manifestly unjust, as well as a perversion of the law to an improper purpose. It is consequently irregular.

Confirmation reversed, and proceedings quashed.