# In re Ridge Street, Allegheny City.

The Court of Quarter Sessions of Allegheny County has no jurisdiction to entertain a petition and appoint viewers, to assess the damages sustained by property owners, by the cutting down and grading of a street in the City of Allegheny.

Nor can such jurisdiction be acquired by joining it with an application for the assessment of damages sustained by the laying out and opening of the street.

The grading of the streets of Allegheny City belongs exclusively, under the Acts of Assembly, to the councils of that city, and their action in the premises cannot be made the occasion for an assessment of damages in favour of adjacent owners, under the general road laws.

The cutting down of a street, consequent upon the reduction of a grade, whereby the buildings of an adjacent owner are injured, is not the subject of legal compensation in any form.

See O'Connor *v.* Pittsburgh, 6 *Harris* 189.

CERTIORARI to the Quarter Sessions of *Allegheny county.*

On the 24th October, 1855, Thomas Irwin, St. Clair Denny, S. Jones, and A. M. Marshall, presented their petition to the Quarter Sessions of Allegheny county, setting forth that, pursuant to an ordinance or resolution of the select and common councils of the said City of Allegheny, "a street called Ridge street has been laid out from Irwin's Avenue to the Ohio river in said city, and carried through in part the lands or lots of the undersigned, to their great damage severally, by the deep cuttings of said street as laid out and carried through, as well as by the appropriation of their land for the purpose. They therefore pray your honorable court to appoint disinterested men to view and adjudge the amount of damages which severally they have thereby sustained, and they will pray, &c."

[In re Ridge Street, Allegheny City.]

Viewers were appointed on the same day by the court, according to the prayer of the written petition.

On the 10th November, 1855, an amended petition was filed, specifying the quantity of ground taken and occupied by the street from each of the petitioners, and stating that the cutting required would be from two to twenty-three feet.

The order issued to the viewers was a certified copy of the petition and order of the court thereon.

The viewers reported on the 6th September, 1856, and the court directed the report to be filed *nunc pro tunc* as of December sessions, 1855. In the report the viewers awarded damages to Thomas Irwin, $3780; to St. Clair Denny, $23,780; to A. M. Marshall, $1416; to Samuel Jones, $31,958; amounting in the aggregate to $60,934.

The counsel for the City of Allegheny, filed exceptions to the report, among which were the following:—

2. The prayer of petitioners and the order of court, in conformity with prayer of petitioners, are irregular and illegal. The prayer of petitioners asks court to appoint viewers, not merely to assess damages to them for opening, but also for cutting away and grading Ridge street; and the order of court directed the viewers to estimate the damages, not only for opening, but also for cutting down or grading said street, viz.: (The damages incurred by petitioners in cutting down and making Ridge street conform to the supposed grade in front of their lands.) This was not in conformity with the Acts of Assembly. Petitioners are entitled to damages for the ground occupied by or appropriated to the street, viz: For the amount of their land taken in opening a street; but not for damages to which they may be subjected in having to cut away and grade the land to be occupied by a street.

3. The viewers have not alone estimated the value of the land taken, as alleged, from the petitioners and assessed the damages for opening Ridge street, but have, in conformity with the order of court, assessed damages to petitioners for the cutting away and supposed grading to which petitioners will be subjected.

4. The damages are exorbitant, and the viewers have not taken into account the advantages arising to petitioners from opening the street, as they were bound by Acts of Assembly to do. In short, the viewers have done nothing but estimate the supposed expenses to which petitioners may be subjected in cutting down and grading in front of their respective lots.

5. The viewers had no right to estimate damages to petitioners for any cutting down or grading to which petitioners might be subjected. The Acts of Assembly, so far from giving a right to property owners to *claim* damages (in Allegheny City), for cutting down and grading a street, compel their owners themselves to *pay*

[In re Ridge Street, Allegheny City.]

all expenses of cutting down and grading, and paving streets in front of their lands.

The Acts of Assembly upon which these exceptions are based, are referred to and recited in the opinion of Mr. Justice WOODWARD.

The court below overruled the exceptions, and confirmed the report of viewers.

The City of Allegheny thereupon caused the proceedings to be removed to this court, and assigned, *inter alia*—that the court below erred in overruling these and confirming the report.

*Woods*, and *D. W.* and *A. S. Bell*, for City of Allegheny.

*H. Hepburn*, for petitioners.

The opinion of the court was delivered by

WOODWARD, J.—Under the various Acts of Assembly relative to the charter powers of the City of Allegheny, the opening of new streets, lanes, and alleys, and the widening of any already laid out and opened, are duties of the city councils which differ very widely as to their mode of exercise, from the powers vested in the same councils to "grade, regrade, pave, repave, or macadamize any permanent street, lane or alley, or sidewalk, or any part thereof."

As to the first, they are "to direct and determine the location and limits of the street, lane, or alley, or the increase of width necessary in any case, and a plan or specification of such location or determination of width shall be made and deposited in the office of the recording regulator of the said city, for public examination and inspection, whereof notice shall be given in at least two newspapers published in said city; and any owner or owners of ground lying on the line of such street, lane, or alley, who shall consider that he, she, or they shall suffer damage from the opening or widening of the same, may apply, by petition, to the next Court of Quarter Sessions of the county of Allegheny, by whom such orders and appointments shall be made, and the same proceedings, in every respect, shall be had for the view, appraisement of damages, the report thereof and confirmation of the same, as are directed by the provisions of general road laws of this Commonwealth:" Sect. 10 of the Act of 16th June, 1836, *P. L.* 753, extended to City of Allegheny by Act of 13th April, 1840, sec. 12, *P. L.* 308. Now, here it will be observed, there is not a word about grading or paving. The plan of specification to be deposited in the regulator's office, is not required to exhibit the grade of the street, but only its location, limits, and width. If the reference to the general road law were to be considered as embracing anything more than the proceedings for damages, that would not imply a necessity for prefixing the grade, for although

[In re Ridge Street, Allegheny City.]

the 3d section of the Act of 13th June, 1836, *Purdon* 718, enjoins that whenever practicable viewers shall lay out roads at an elevation not exceeding five degrees, they are not required to make any return or record on the subject.

The appeal to the Quarter Sessions for damages is to be for the "opening or widening" of the street, lane, or alley, and it would seem that the opening or widening was to be considered as accomplished when councils had given notice in two newspapers of the filing of the specifications in the regulator's office.

Such are the provisions of law for that branch of the city's jurisdiction over streets. Now, in reference to grading and paving—

The 1st section of the Act of 5th April, 1849, *P. L.* 341, provides that the city councils shall have power by ordinance to grade and pave, repair or macadamize any pavement, street, lane, alley, or sidewalk, or any parts thereof, within the City of Allegheny, on the petition of not less than two-thirds of the number of owners of any lots, section, square or parts of a square of said city, bounding or abutting on such street, lane, alley, or sidewalk, so to be graded and paved or repaired, or macadamized, and shall have power to levy and collect a special tax for defraying the costs and expenses of the same, by an equal assessment on the feet front bounding and abutting as aforesaid.

By sect. 3 of an Act of 8th April, 1851, *P. L.* 372, so much of the above provision is repealed as requires the petition of two-thirds of the lot-owners to give jurisdiction. The result of this is, that the councils have power, to be exercised upon their own discretion, to grade, pave, and improve any street, lane, alley, or sidewalk; and instead of subjecting the city to damages therefor, to be assessed and recovered under the general road law, they have power to levy and collect a special tax from the adjacent owners for defraying the expenses.

Now, the proceedings we have before us originated in a petition to the Quarter Sessions, signed by four petitioners, setting forth that, pursuant to an ordinance of the city councils, Ridge street had been laid out between certain points in the City of Allegheny, and carried through the lands of the petitioners to their great damage, by the deep cuttings of said street, as well as by appropriation of their lands, and concluding with a prayer for viewers to assess their damages.

Afterward they filed an amended petition, setting forth more specifically the land taken from them for said street, and the excavations, from two to twenty feet, that were to be made.

Viewers were appointed at the November Term, 1855, and on the 6th September, 1856, they filed their report and assessment of damages, which the court directed to be entered as of December Sessions, 1855, *nunc pro tunc*. The aggregate amount of

[In re Ridge Street, Allegheny City.]

damages which the report awards to the four petitioners is $60,934.

The court overruled the exceptions filed to it, and confirmed the report as it was made, and it is now here for review. It is perfectly apparent that the two subjects of opening and grading streets, kept studiously separate in the legislation I have referred to, are blended and jumbled together in these proceedings. On the face of the petition, the deep cuttings of said street is made a prominent subject for the claim of damages. The length of the time taken by the viewers, the large compensation charged for their services, and the enormous damages awarded, all indicate clearly that it was not merely the opening of Ridge street which they took into consideration, but the deep cuttings which they assumed were contemplated, and the effect these would have on the properties of the owners complaining. This, indeed, was not only the *gravamen* of the complaint, but of the assessment of damages, and yet for such a proceeding in respect to such a subject-matter, there is not a syllable of legal authority shown or alleged.

It is no more clear that the Quarter Sessions had jurisdiction to assess damages for opening Ridge street, than it is clear that they had no jurisdiction to assess damages for grading it. Nor did they acquire jurisdiction over the latter subject by linking it to the former. In no form or manner is the grading of streets committed to the courts.

It is a subject which belongs, under the Acts of Assembly, exclusively to the councils, who are the immediate and local representatives of the people, and whose action, whilst it may result in taxation of adjacent owners, cannot be the occasion for an assessment of damages under our road laws. What was said by Judge SERGEANT, in the Newville Road Case, 8 *Watts* 177, about the right of an owner to have damages not only for occupying his land with a public road, but for lessening the value of the remainder, had reference to a complaint of the *shape* in which the residue of the petitioner's land was left, and not to digging and grading, or any other matter that was governed by municipal regulations. In O'Conner *v.* Pittsburgh, 6 *Harris* 189, it was held that the cutting down of a street consequent on the reduction of the grade, and ruining an owner's building, was not the subject of legal compensation in any form. This, it must be admitted, is very harsh law, and operates with great injustice in the cities of Pittsburgh and Allegheny, where the topography is such as to make frequent cuttings necessary to obtain streets of tolerable grades, but it is the result of legislation sought for and obtained by the people themselves. It is impossible for us to relieve individual cases of hardship, for we are set to administer the law as we find it, rather than to mould it as it should be.

[In re Ridge Street, Allegheny City.]

Several exceptions were taken to the regularity of these pro-/
ceedings in other respects, such as the joinder of four petitioners
in one petition, the omission of the viewers to make return to the
next sessions, and the order of the court for entering their report
of a term long past; but it is not necessary to discuss these topics,
nor even to intimate an opinion upon them, for the want of juris-
diction is an objection to this record that is fatal and final.

The court had no power to award a view for the purpose set
forth in the petition, and it is of no importance whether their sub-
sequent proceedings were regular or irregular.

> The decree of the court is reversed and all the proceed-
> ings are set aside.