# In the Matter of the Vacation and Supply of a Public Road in Ottercreek Township.

1. Under the Act of June 15th 1836 (P. L. 556), a petition for the view of a public road should designate only the termini, and the order must in this respect follow the petition. The route between the terminal points is exclusively for the viewers.

2. But a proceeding to vacate and supply an old road between certain points designated in the order is not a matter of right in the petitioner, but of discretion in the court of Quarter Sessions; and to move that discretion, it is proper to recite in the petition the particular defects in the present location of the road, and to suggest the selection of another route in order to remedy such defects.

October 11th 1883. Before GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. MERCUR, C. J., and PAXSON, J., absent.

CERTIORARI to the Court of Quarter Sessions of *Mercer county:* Of October Term 1883, No. 129.

The record showed the following facts: On April 5th 1880, certain citizens of Ottercreek township presented a petition to the court of Quarter Sessions of Mercer county, for the vacation and supply of a public road. This petition (as recited in the order of court based thereon, the original not appearing in the record), set forth that " a road has long since been laid out, leading from Little Shenango creek, in a southerly direction to the Leech road, near Dan Haunce's house, all in said township, and known as the Limber road, and that the part of said road commencing at the northeast corner of J. G. Riley's land in the centre of the said Limber road, thence in a southwesterly direction for a distance of about two hundred rods, was intended to be on the line between the lands of the said J. G. Riley and Henry McMahan on the west of said road. and the lands of Wm. Wagerman, J. G. Riley and Henry McMahan on the east

of said road, and was intended to be straight; but said part of said Limber road for a distance of two hundred rods, commencing as aforesaid and running between said lands, to a point on said Limber road where a road leads off from said Limber road to Daniel Belton's farm, is not now on the line between said lands, and is crooked. Your petitioners believe that said part of said road should be exactly on the line between said lands, and be perfectly straight between said points, and that the present location should therefore be changed. And your petitioners further represent that another road leading from said Limber road, commencing at a point near the residence of the said J. G. Riley, thence in a westerly direction for a distance of about one hundred and nineteen rods, bounded on the north by land of said J. G. Riley and on the south by land of Henry McMahan, to a point in centre of said road on the west line of said lands, was intended, when it was originally laid out a long time since, to be on the line between said lands, and is crooked. Your petitioners believe that the location of said road should also be changed and put on the line between said lands and made perfectly straight between said points." The petitioners therefore prayed the court to appoint viewers to vacate and supply the said roads.

The court thereupon appointed viewers and directed that if they should agree that there was occasion for such roads they should proceed to lay out the same, " as agreeably to the desires of the petitioners as may be, having respect to the best ground for a road, and the shortest distance."

The reports of these viewers, and of reviewers who were subsequently appointed, were each confirmed nisi; and afterwards, upon petition, the court appointed re-reviewers, who reported on January 3d 1882. Exceptions filed to this report by Henry McMahan, one of the owners of property adjoining said roads, were dismissed by the court on the twenty-sixth of the following June. On July 6th, the court, on motion of said McMahan, stayed proceedings on the roads until the next term; when McMahan filed the following:

" And now, August 7th 1882, the court is respectfully moved to take off the confirmation and set aside the report of the re-reviewers and quash the proceedings in this case for the reason that the petition and order pray and direct the viewers to place the said road upon certain intermediate points therein named, to wit: upon the line of lands of J. G. Riley and Henry McMahan, the same being irregular, improper, and an error which appears upon the face of the record, fatal in itself to the proceedings."

This motion was refused by the court, and the report of the re-reviewers was finally confirmed. Whereupon, McMahan

took this certiorari, assigning for error the refusal of the court to grant his motion and quash the proceedings.

*E. P. Gillespie* (with whom was *S. Griffith*), for appellant. —It is a well established principle of the road law of Pennsylvania that viewers must not be controlled in any way by the order in respect to the intermediate points of the road, and that designating intermediate points in a petition or an order is fatal to the proceedings: Catherine Tp. Road, 76 Pa. S. R. 189 ; McConnell's Mill Road, 32 Id. 285 ; Road in Lower Merion, 58 Id. 66. It appears from the petition that intermediate points were designated as follows : " Your petitioners believe that said part of said road should be exactly on the line between said lands and be perfectly straight between said points." The proceedings were therefore irregular, and should have been quashed.

Mr. Justice CLARK delivered the opinion of the court, October 29th 1883.

A petition for the view of a public road should designate only the termini, and the order must, in this respect, follow the petition. The route between the terminal points is exclusively for the viewers; it is their duty to view the ground, between the points designated in the order, " and if they shall agree that there is occasion for the road, they shall proceed to lay out the same, having respect to the shortest distance and the best ground for a road, and, in such manner, as shall do the least injury to private property," &c. If the petition and order may contain one such intermediate point, it may contain many, and as was said in McConnell's Mill Road, 8 Casey 285, this " would enable the petitioners to stake out the entire road, before even the jurisdiction of the viewers attached." The same rule is given in Road in Lower Merion, 8. P. F. Smith 68, and in Catherine Township Road, 26 P. F. Smith 189, and is undoubtedly the correct construction of the Act of 13th June 1836.

But, the proceeding now before us is not a view to lay out a new road, it is a view to vacate and supply an old one, between certain points designated in the order. An order to view and vacate a public road is not a matter of right in the petitioners, but of discretion in the court of Quarter Sessions : 8 Watts 172. To move that discretion, it is certainly proper to recite in the petition the particular defects in the present location of the road, and to suggest that it is possible to remedy their defects by selecting another. If the road, as located, should pass over an elevated summit, with a heavy grade, it would certainly be proper to suggest, that by passing around the base, its length

'[Matter of Ottercreek Township.]

would not be increased and the grade might be greatly improved; or, if the present location is through a swamp, it is proper to suggest that by a particular route designated and described, it is possible to put the road upon dry and solid ground. Indeed the general road law of 1836 requires, that every application to vacate a road, "shall set forth, in a clear and distinct manner, the situation and other circumstances of such road or highway, or the part thereof which the applicants may desire to have vacated, as aforesaid."

In the present case, the petition is lost and does not form part of the record before us, but the order, which purports, and is presumed, to contain its substantial recitals, sets forth that upon the petition of sundry inhabitants of Ottercreek township, it appears that a road has lately been laid out, between certain points designated, known as the Limber road and that a part of that road, running in a south-westerly direction, for a distance of about two hundred rods, designated by terminal points, "was intended to be on the line between the lands of the said J. G. Riley and Henry McMahan on the west of said road and the lands of William Wagerman, J. G. Riley and Henry McMahan on the east of said road, and was intended to be straight," but, that the same "is not now on the line between said lands and is crooked;" that the "petitioners believe that said part of said road should be exactly on the line, between said lands, and be perfectly straight between said points, and that the present location should therefore be changed." A similar representation is then made as to another road, connecting with the Limber road and leading in a westerly direction, a distance of about one hundred and nineteen rods. The prayer of the petition is for the appointment of proper persons to view, lay out and vacate the same according to law. Neither the petition nor the order, in fact, fix any intermediate point; they contain a suggestion that the roads were not originally located as laid out, and that they should be changed and put where they were originally intended to be, but the prayer is for a view according to law, between the points named. The substantial recitals in the petition, are that the roads are crooked, and that they should be straightened.

The order directs the viewers, if they shall agree that there is occasion for the road, that they shall proceed to lay out the same, having respect to the shortest distance, and the best ground for a road, &c. as directed by law.

We cannot agree with the plaintiffs in error, that the proceedings of the Quarter Sessions, in the respects assigned, are irregular, and the said proceedings are therefore affirmed.