make the insurance, and has permitted the suit for the defend-ant's whole subscription to proceed to judgment, without a claim on his part.    It is perfectly well settled, that judgments may be set off against each other, (3 Wils. 396, 2 Bl. Rep. 669,) and we can see no reason why a defalcation should not take place in the present instance.

The decision of the Chief Justice must be confirmed.


## John Feree *against* John Meily, Robert Maxwell and Adam Reigart, commissioners of Lancaster county.

Return of the viewers of improved lands taken up by a public road, that the damages resulting to the owner are valued at 45l. is radically bad.

The soil of improved lands converted into a public road, is not to be valued and paid out of the county stock.

CERTIORARI to the sessions of Lancaster county.

The following facts appeared on the return of the record. The plaintiff preferred his petition to May sessions 1796, setting forth, that a road for the accommodation of the public had lately been laid out from the village of Strasburgh to James Gibbons's mill, on the state road leading from Lancaster to Philadelphia; that it runs through the improved lands of the petitioner 50 perches, and along his line 20 perches, and had been opened of the breadth of 33 feet; that the injuries resulting to him there-from were many, and of a peculiar and very serious kind, arising from the value and nature of the property, and the valuable im-provements which it had destroyed.    It had caused a good brick stable to be pulled down, a painted board fence, inclosing the garden, to be removed, and part of the garden, which was highly improved, to be converted into the road.    It led through the petitioner's orchard, and had destroyed 12 or 15 fruit trees of the best.kind, and induced a necessity to make and keep up 120 perches of fence, which would otherwise be of no use to the petitioner.    The property through which the road led, being out *lots adjoining the village, it was subject to great incon-    [*154 venience, by destroying the communication between the several parts of it ; and praying the court to appoint six indiffer-ent persons to view and adjudge the value of so much of the improved lands as was taken up by the road, and also the dam-ages sustained by the petitioner, in his improvements, by laying out the road.

Whereupon the court appointed six persons to view and ad-judge the value of so much of the improved lands of the peti-tioner as had been taken up for the said use.    And the persons so appointed returned to August sessions following, that they had viewed the improved lands of the petitioner taken up by the road, and after maturely considering the premises, had agreed

[Feree *v.* Meily et al. Commissioners.]

to report, that the damages resulting from the said road to the said John Feree were of the value of 45l., which report on consideration was confirmed by the court.

In November sessions following, the court on argument confirmed the report, and directed that the commissioners of Lancaster county should pay the said 45l. to the said John Feree out of the county stock, according to the act of assembly, &c.

In May sessions 1800, the court granted a rule on the commissioners to shew cause why an attachment should not be awarded against them for not complying with their former order, which was afterwards made absolute in the same sessions ; and all the proceedings were then removed by *certiorari* to this court.

Mr. B. Wilson moved, that the court should confirm the order of sessions. There appeared nothing in the record but what was consonant to the act of 1700. (1 Dall. St. Laws 17, § 2.) The words are, that the men appointed shall "view and adjudge "the value of so much of such improved lands as shall be taken "up for the use of the said road." They are to value the improved lands, not the mere improvements made on the lands.— The expressions have a clear definite meaning. Nor are there any instances wanting of this construction put on the law. In June sessions 1786, Joseph Crawford, guardian of the minor children of Hugh Crawford, petitioned for a valuation of improved lands in Philadelphia county, occupied by a road. The persons appointed valued them at 35l. and made report to the September sessions following. In March sessions 1788, a rule was obtained on the commissioners to shew cause why an attachment should not issue against them for non-payment of the money ; and in December sessions following, the rule was made absolute. In March sessions 1797, persons in the same county *valued lands, occupied by a road in the Northern Liberties, at 100 dollars per acre.

*155]

Mr. Ingersoll *é contra,* admitted that there might be two or three cases, wherein improved lands had been valued ; but insisted that the point had never been solemnly determined on argument, and that the general received idea of the law had uniformly been, that the improvements only were to be appraised. At all events, the will of the legislature must be pursued, if it can be discovered from their expressions. The law was passed above a century ago, and the state of the country will come in aid of a true construction. Lands were then in little request. The whole country was then open to applicants, covered as it was with wood. The late proprietaries uniformly laid out streets in towns, and in every grant of lands made an allowance of six acres in each hundred for roads and highways. In this state of things, the act of 1700 gave power to the sessions to lay out roads or cartways into the public provincial roads, which were to be made "in and through such convenient places as were least "to the damage or inconveniency of the neighbors or parties

[Feree *v.* Meily et al. Commissioners.]

"concerned, and least injurious to the settlements thereabouts."
Then follows a provision, "that no such road shall be carried
"through any man's improved lands, but where there is a ne-
"cessity for the same; and where that appears, the respective
"county courts shall appoint," &c. Could the legislature then
contemplate the payment of the soil of uncultivated lands, oc-
cupied by highways? Can any rational ground be assigned why
this species of soil, dedicated to the public use should be paid
for, and woodland be unprovided for? The making of compen-
sation in the former case for actual improvements, makes the law
equal and consistent with sound reason. Improved land at the
time of passing the law was most valuable: it was productive.
But the trust of the six acres per cent. for highways descends
*ad infinitum* on the owners of each species of land. It is con-
ceded, that in some instances of persons holding valuable lands
near the city, or populous towns, the operation of the law may
be hard and severe; but it is well known, that in those cases,
woodland bears a much higher value than what has been cleared
of the timber. But let the evils attendant on the law be what
they may, the legislature only are competent to give relief.

There is also a radical defect on the face of the proceedings.
The viewers return, that the damages resulting from the said
road to the said John Feree are valued at 45l. What is in-
cluded in this estimate beyond the value of the land, it is impos-
sible to ascertain. The manner of its wording shews there was
*something in their estimate which the viewers did not
wish particularly to express. [*156

The court unanimously reversed the proceedings on the last
ground. The Chief Justice, however, during the argument,
said, that the case of owners of valuable grounds near the city
or towns, stripped of their property for the public emolument,
being hard, he would adopt the construction that the lands should
be paid for out of the county stock, as the words of the act were
sufficiently comprehensive to warrant such construction. But
all the other members of the court held, that the legislature could
not at that early day have contemplated a compensation for the
soil of improved lands converted into a public road, and that the
uniform interpretation of a century had settled the true law.
This construction seemed to them to be strongly fortified by a
consideration of the proprietary allowance made for roads and
highways in all their grants.

Judgment of the sessions reversed.