## Workman *et al. versus* Mifflin.

</div>

A ground-rent is not apportioned by the taking of a part of the lot, out of which it is reserved, for a public highway.

Cuthbert *v.* Kuhn, 3 *Wh.* 357, examined and explained.

A ground landlord is not an owner to whom damages can be awarded for the opening of a street through the land.

His only remedy is in equity, to have a portion of the damages impounded to meet the accruing rents.

If the owners of the land receive the damages awarded, they cannot set up the taking of the land, as a defence to the payment of the ground-rent.

*Quere*, whether, in Pennsylvania, the heir, as such, is liable upon the covenant of his ancestor, binding himself and heirs?

ERROR to the District Court of *Philadelphia*.

This was action of covenant, by Sarah Mifflin against Eliza Williams and others, for arrears of ground-rent.    The parties agreed upon the following case stated, reserving the right to a writ of error to the judgment of the court.

"By indenture made the 31st day of December A. D. 1810, recorded in Deed Book I. C., No. 10, p. 704, &c., between John

[Workman *et al. v.* Mifflin.]

F. Mifflin and Clementina, his wife. of the one part, and John Workman of the other part, the said John F. Mifflin and wife conveyed to the said John Workman, in fee, five certain lots or pieces of ground, situate on the west side of Delaware Front street, continued in the district of Southwark, marked in the plan thereon endorsed Nos. 1, 2, 3, 4, and 5. The said lot No. 1 containing in breadth on the said Front street, 16½ feet, more or less, bounded northward by lot No. 2; the said lot No. 2 containing in breadth on the said Front street 16½ feet, more or less, bounded northward by lot No. 3; the said lot No. 3 containing in breadth on the said Front street 16½ feet, more or less, bounded northward by a three feet wide alley; the said lot No. 4 containing in breadth on the said Front street 16½ feet, more or less, bounded northward by the said lot No. 5, and each of the said lots containing in depth 90 feet; the said lot No. 5 containing in breadth on the said Front street 20 feet 9 inches, more or less, and in depth 90 feet, bounded as therein particularly set forth; reserving out of each of the said lots a yearly ground-rent, and out of the said lot No. 5, a yearly ground-rent of eighty-three dollars, payable on the 4th day of April in every year thereafter for ever, to the said John F. Mifflin, his heirs and assigns, free of all deductions for taxes, charges, or assessments whatever, whether ordinary or extraordinary, as well on the said lots of ground as on the rent thereby reserved. And the said John Workman for himself, his heirs, executors, and administrators, covenanted with the said John F. Mifflin, his heirs and assigns, that he, the said John Workman, his heirs and assigns, would well and truly pay to the said John F. Mifflin, his heirs and assigns, the said rent without any deduction as abovementioned.

"By another indenture made the 14th day of April A. D. 1812, recorded in Deed Book I. C., No. 17, p. 559, &c., between the same parties, the said John F. Mifflin and wife conveyed to the said John Workman, in fee, two certain messuages or tenements, and lot or piece of ground thereunto belonging, situate at the distance of 90 feet westward from the west side of Front street, in the district of Southwark, containing in breadth north and south about 89 feet 9 inches, more or lets, and in length or depth east and west 112 feet 3½ inches, more or less, bounded as therein set forth, reserving thereout a yearly ground-rent of $179.50, payable on the 4th day of April in every year thereafter for ever, to the said John F. Mifflin, his heirs and assigns, free of all deductions for taxes, charges, or assessments whatever, whether ordinary or extraordinary, as well on the said lot of ground as on the rent thereby reserved, and the said John Workman, for himself, his heirs, executors, and administrators, covenanted in the said last-mentioned indenture with the said John F. Mifflin, his heirs and assigns, that he, the said John Workman, his heirs and assigns,

would well and truly pay to the said John F. Mifflin, his heirs and assigns, the said rent thereby reserved, without any deduction, as abovementioned.

"On the 13th day of May A. D. 1813, the said John F. Mifflin died seized of the said two ground-rents, having made his last will, dated the 24th day of October A. D. 1812, whereby he devised the said ground-rents of $83 and $179.50, *inter alia,* to Dr. Caspar Wistär and Edward Burd, Esq., in trust, to sell and dispose of, and they, by indenture of 28th of June 1815, conveyed the same in fee to the plaintiff.

"The said John Workman died on the 1st day of January 1829, seized of the said lot of ground, subject to the said rents thereout respectively reserved, intestate, leaving the said defendants his issue and his heirs at law.  Whereupon his estate in the said lots of ground came to and vested in the defendants.

"Under proceedings in the Court of General Quarter Sessions of the Peace, in and for the county of Philadelphia, upon a petition for a jury of view to view and lay out Scheetz street, the viewers for that purpose selected made report on the 30th day of December A. D. 1843, that they had laid out, and did return for public use the following street, 38 feet wide, to wit: beginning at a point on the east line of Second street, in the district of Southwark, at the distance of 90 feet southward from the southeast corner of Cox's alley, or street, and said Second street, thence extending eastward on a line between T. A. McDonnell, C. M. McIntyre, Samuel P. Watkins, and Jacob Scheetz on the north, and ground of Jacob Scheetz on the south, now thrown open by the said Jacob Scheetz for a street, to a point on the west line of Front street, at a distance of 86 feet southward from said Cox's alley, or street, and thereon southward along the line of said Front street, on the line of Jacob Scheetz and the estate of John Workman, deceased, 38 feet to a point, thence westward of that width on a parallel line 201 feet 7¾ inches, passing through ground of the estate of John Workman and Jacob Scheetz, and thence continuing the same line westward a further distance of 201 feet 7¾ inches, to the east line of Second street aforesaid, at the distance of 128 feet southward from the south-east corner of said Cox's alley, or street, and Second street, passing through the lands of the said Jacob Scheetz, and on the line dividing ground of H. Osler and Jacob Scheetz, and thence northward on the said line of Second street to the place of beginning.

"Which report was confirmed by the said court on the 4th day of June A. D. 1846, and on the 23d day of October A. D. 1846, a jury of viewers duly appointed to assess the damages by reason of the opening of said street, assessed the damages by opening said street, to the heirs of the estate of John Workman, deceased, at

[Workman *et al. v.* Mifflin.]

$4750, and this assessment was duly confirmed and approved by the said court on the 2d day of April A. D. 1847.

"By an Act of Assembly of this Commonwealth, entitled an Act to open Scheetz street, in the District of Southwark, approved the 29th of March A. D. 1849, it was enacted that the said street should be opened, as it was described in the said report of the jurors in favour of opening the same, and that the damages sustained by the opening of the said street should be paid out of funds of the county of Philadelphia, to wit, $4750, assessed by the said jury sworn or affirmed, October 23d, 1846.

"The defendants afterwards applied for and received payment from the treasurer of the county of Philadelphia, of the said sum of $4750, in two payments, to wit: $2714.29 on the 23d of March 1850, and $2035.71 on the 3d of April 1850, which sums were paid on those days respectively, by the said treasurer to the agent or attorney of the defendants. The defendants have retained the whole thereof, claiming to hold it for their own use, and have refused to pay any part thereof to the plaintiff.

"Twenty feet of the southerly part of the said Scheetz street was laid out upon twenty of the northerly part of the said lot of ground, No. 5, out of which the ground-rent of $83 was reserved, leaving four inches of the said lot not taken by the said street, and also upon twenty feet of the northern part of the said lot of ground of which the ground-rent of $179.50 was reserved.

"No part of the said ground-rent of $83 has been paid since the year 1852; and of the ground-rent of $179.50, reserved as aforesaid, a part only, to wit: the sum of $139.50, has been annually paid by the defendants, since the year 1852.

"This action of covenant is brought against the defendants, heirs of the said John Workman, upon his covenant, contained in the said indenture, respectively to recover four annual payments of $83 each, claimed to be due on the 4th April 1853, 1854, 1855, and 1856, respectively, with interest on the same from the dates they respectively became due; and also a balance of $40, claimed to be due on the 4th April 1853, 1854, 1855, and 1856, respectively, upon the said ground-rent of $179.50, with interest, from the dates the same became due, respectively.

"The defendants claim that they are not liable to pay so much of the said ground-rents as, upon a just apportionment thereof, would be chargeable upon that part of the lots, whereout they were reserved, which was appropriated for Scheetz street, aforesaid.

"It is agreed that the amount of the said ground-rent of $83, properly chargeable on an apportionment upon the four inches of the said lot No. 5, not taken and appropriated for the said Scheetz street, is $1.33; and that the amount of the said ground-rent of 179.50, in like manner chargeable on the lot of ground out of

[Workman *et al. v.* Mifflin.]

which it issues, not taken and appropriated for the said street, is $139.50.

"If, upon the whole case, the court are of opinion in favour of the plaintiffs, judgment is to be entered in her favour for the aggregate of the following sums, to wit:—

| | | | | | | |
|---|---|---|---|---|---|---:|
| Due, April 4, | 1853, | from lot No. 5 | . | . | | $83.00 |
| " | " | 1854, | " | " | " . . | 83.00 |
| " | " | 1855, | " | " | " . . | 83.00 |
| " | " | 1856, | from lot No. 5 . | | . | 83.00 |
| " | " | 1853, | from last-mentioned lot | | | 40.00 |
| " | " | 1854 | " | " | " | 40.00 |
| " | " | 1855 | " | " | " | 40.00 |
| " | " | 1856 | " | " | " | 40.00 |

With interest on those sums, respectively, from the above dates, respectively.

"If, however, the court are of opinion in favour of the defendants, judgment is to be entered in favour of the plaintiff, for the aggregate of the following sums, to wit:—

| | | | | | | |
|---|---|---|---|---|---|---:|
| Due April 4, | 1853, | from lot No. 5 | . | . | | $1.33 |
| " | " | 1854 | " | " | " . . | 1.33 |
| " | " | 1855 | " | " | " . . | 1.33 |
| " | " | 1856 | " | " | " . . | 1.33 |

With interest on these sums, respectively, from the above dates, respectively."

The court below gave judgment for the plaintiff, upon the case stated, for $580.92, which was here assigned for error; and delivered the following opinion:—

"*Per Curiam.*—Cuthbert *v.* Kuhn, 3 *Wh.* 357, is generally regarded as laying down the broad position that wherever a part of the land subject to a ground-rent is taken by the public for the purpose of a highway, the rent is apportioned; if, however, the opinion of C. J. GIBSON be clearly examined in connexion with the nature of the application and the facts of that case, it will be found that the decision is put at last upon equitable grounds entirely. It is distinctly admitted that such a taking of the land is not at law an eviction, the title remains in the owner. If there be no eviction to work a suspension at law, it is certain that, as there is no equitable plea to an avowry, the tenant cannot have remedy for an equitable eviction by replevin. Failure of consideration under a reservation by deed was relieved against by a common law court in Fairman *v.* Fluck, 5 *Watts* 516, and Warren *v.* Clark, only because there was no separate forum of equitable administration from which relief might be had. These are views prominently presented in that opinion. In point of fact there

[Workman *et al. v.* Mifflin.]

had been in Cuthbert *v.* Kuhn, as in this case, an award of a sum of money to the tenant in gross, as damages. The tenant filed a bill in equity, containing an offer to pay the landlord such proportion of the damages assessed as he would be equitably entitled to receive. The court decreed that the sum should be ascertained by an issue, and that the tenant was entitled to an apportionment according to the prayer of the bill.

"In the case before us, the damages awarded were all received by the tenants; they make no offer or tender of any part. The doubt is whether, when the damages were awarded they did not constitute a fund to which the owner of the ground-rent was bound to resort? The Act of Assembly only speaks of the "owner of the land" as entitled to compensation. There is no Act of Assembly which requires the court to distribute the amount as a fund among all those who have an interest in or encumbrance upon the land. It has been the established practice of the Court of Quarter Sessions of this county to do so, and doubtless it was a power incident to the jurisdiction, to prevent injustice. We cannot say, then, that the landlord lost his legal claim upon the land by not resorting to the fund. It does not appear in the case before us, that the court did exercise the power of distributing the fund. No auditor was appointed. No public notice given. Nor does it appear that any notice was given to the landlord of the proceedings to lay out the road.

"The law does not render such notice necessary. If this was a judgment instead of a rent, could it be doubted that the security would stand good, and that the entire lot could be seized and sold subject to the right of way which the public had acquired? and the same would be the case of a mortgage.

"How can the defendant ask for what the Supreme Court have decided to be a mere equity, without, on his part, doing or offering to do equity? The security of the landlord has been materially impaired—it might have been taken away entirely; but as long as the legal title of the tenant was not divested, he can still resort to his covenant, and cannot be barred from a recovery thereon, until the tenant does what in equity and good conscience he ought to do.

"Judgment for plaintiff for $580.92."

*Cuyler*, for the plaintiff in error.—It is not easy to distinguish this case from Cuthbert *v.* Kuhn, 3 *Wh.* 365. In that case a lot of ground had been granted in fee, reserving a ground-rent, and a street having been opened across the lot, and damages awarded to the owner, a part of which were ordered to be paid to the owner of the ground-rent, the court held:—"That the ground-rent was apportioned by the opening of the street, and that the rent was

[Workman *et al. v.* Mifflin.]

reduced in proportion to the amount of the lot taken for public use."

The sum paid to the heirs of Workman was expressly found to be *their* damages. The ground-rent was a separate estate, for which the plaintiff should have claimed damages before the jury: Irvin *v.* Bank of U. S., 1 *Barr* 349; Turnpike Road *v.* Brosi, 10 *Harris* 29.

*McCall*, for defendant in error.—The case of Cuthbert *v.* Kuhn, 3 *Wh.* 357, is no authority for the broad proposition that a ground-rent is apportioned by the opening of a street through the ground out of which the rent issues. In that case, Mrs. Cuthbert did not claim to retain the whole damages, and yet ask for an apportionment; on the contrary, she offered to pay to the landlord a portion of the damages equivalent to the value of the rent.

This case being out of the way, how does the question stand upon principle? The opening of a street is an exercise of the right of eminent domain. It is not the act of the landlord; and therefore not an eviction. The right to the soil still resides in the tenant, subject to the license of the public to pass over it: Lewis *v.* Jones, 1 *Barr* 336; Dobbins *v.* Brown, 2 *Jones* 75.

An examination of the authorities will show, that in the case of an express contract for the payment of rent, so long as the estate, as contradistinguished from the possession, remains, the rent is payable at law, no matter what the condition of the demised premises by the act of God. Thus, if a house be blown down or destroyed by fire: Monk *v.* Cooper, 2 *Str.* 763; Belfour *v.* Weston, 1 *T. R.* 310, or gained upon by the sea; Taverner's Case, *Dyer* 56, *a*, or the occupation be rendered impracticable by the public enemies; Paradise *v.* Jayne, *Aleyn* 26; so where a wharf was swept away by the Thames; Carter *v.* Cummins, cited in Harrison *v.* Lord North, 1 *Ch. Ca.* 84.

The opinion of the court was delivered by

STRONG, J.—In 1829, the defendants below, by the death of their ancestor, became seised of two lots of ground, out of each of which issued ground-rent, and they continued seised until this suit was brought. During all this period, the plaintiff below has been the owner of the ground-rent. In 1850, under authority of an Act of Assembly, a street was opened on a part of each of these lots, covering nearly the whole of one, and about one-fourth of the other. The damages caused by opening the street were duly assessed, and the sum reported by the jury for the defendants was paid to them, and they still retain it. The rents for the years 1853–'4–'5 and '6 not having been paid, this action of covenant was instituted; and the defence set up is, that inasmuch as a part of the ground, out of which the rents issue, has been taken for a

public highway, the rent should be apportioned, and that the plaintiff should recover only such proportion of the whole, as the part of the lots unoccupied by the street bears to the entire loss.

We are of opinion that the defence is not well founded. The appropriation of the ground for a public highway is not an eviction by the landlord, nor by one holding paramount title. It is an exercise of the right of eminent domain, which does not divest the tenant of his seisin, and but partially disturbs his possession. Subject to this right all property is held, and it has been ruled that a warranty of possession is not broken by the entry of the Commonwealth and construction of a canal: Dobbins *v.* Brown, 2 *Jones* 75. The tenant has still an exclusive possession of all except the surface, and even of that diminished only by the public right of passage. Nothing has been taken from him which has diminished his right of property; for in municipal society, property is ownership, subject to the right of eminent domain. That was the property which the ancestor of the defendants bought when the ground-rents were reserved; and it was out of the lots thus liable to public appropriation that the rents issued. True, rent is sometimes said to be incident to enjoyment, and from this it is argued that, inasmuch as a part of the enjoyment of the lots has been taken away, the tenant's liability for rent has rateably diminished. But when it is said, that rent is incident to enjoyment, that enjoyment only is meant, the right to which the tenant has obtained from the landlord. If the landlord withhold, or take away any thing which he has granted, it is equivalent to a partial eviction. A tortious disseisin of the tenant by a stranger, however, has never been held to relieve the tenant from his covenant to pay rent, though it takes away his enjoyment of the thing demised; and if a house be destroyed by fire, the tenant who has covenanted to pay rent is at law still liable, notwithstanding his enjoyment is entirely lost. He was even bound to rebuild, until relieved by the statute of Anne.

The question ever returns, what did the landlord agree that the tenant should enjoy, and what rights of enjoyment did the tenant acquire? In the case now before us, as has been seen, the landlord never stipulated, that no part of these lots should ever be taken for public use, and the tenants acquired no right to the enjoyment of such an exemption. The sequence of this is, that no enjoyment of the thing demised, as the consideration for the rent, has been taken away, or even diminished, by the appropriation of a part of the ground for a public highway. An examination of decided cases would show, if it were necessary, that this is a correct view of the enjoyment to which the tenant is entitled, and which is essential to preserve his liability to pay rent.

In Taverner's Case, 1 *Dy. Rep.* 55 *b*, the first which I have been able to find, there was a lease of land and a flock of sheep,

[Workman *et al. v.* Mifflin.]

with a certain rent, and all the sheep died. It was claimed, that the rent should be apportioned, as the tenant had lost the enjoyment of the sheep without any default of his. The case was not decided, but the doctrine was asserted that such loss of enjoyment did not relieve the tenant: In Paradise *v.* Jayne, *Aleyn's Rep.* 26, the tenant had been ousted by the king's enemies, but was held to continue liable. This case was decided by ROLLE, J., the author of the abridgement. The subsequent decisions are almost uniformly the same. Without reviewing them at length, reference may be made to Baker *v.* Holtzapffel, 4 *Taunt.* 45; Hallett *v.* Wylie, 3 *Johns.* 44, cases at law; and to Hare *v.* Groves, 3 *Anst.* 687, and Holtzapffel *v.* Baker, 18 *Vesey* 115, cases in equity; also 6 *Mass.* 63, 1 *Dall.* 210.

There is another view of the case which leads to the same conclusion. The defendants below have received, and still retain, $4750, the damages awarded to them, occasioned by opening the street. It is impossible to regard those damages as anything else than compensation for what the Commonwealth has taken away. They are a substitute for the diminution of enjoyment ment of the land, as much so as the proceedings of a sheriff's sale are a substitute for the land sold. The aggregate enjoyment of the damages, and of the land burdened with the public right of passage, is a precise equivalent to that which the tenants had before the street was opened. They have all, though in a modified form, which their ancestor obtained as the consideration for the ground-rent reservation. It is no satisfactory answer to this view of the case, to say that the landlord might have applied for an assessment of his damages, and that those which were reported by the jury in this case, were exclusively those of the defendants. If this be admitted, it does not break the force of the truth that they have all which the landlord demised, and that they are not prejudiced, even though still liable to the ground-rent. But it appears to me, that the ground-rent landlord could not have applied for any assessment of damages sustained by him. It must not be forgotten that even the owner of land, taken for a public highway, is entitled to compensation only as a thing of grace, not of right. The allowance of six per cent. in all grants, as well by the original proprietaries, as by the Commonwealth, was itself compensation. And although, in most of the statutes passed since the year 1700, relative to opening roads, provision has been made for assessing the damages of the landowner, through whose lands the new road has been opened, yet this has been accorded as a favour, and not because there was any obligation to make compensation: McClenachan *v.* Curwin, 3 *Yeates* 362; Ferce *v.* Meily, 3 *Yeates* 153. No others are, therefore, entitled to an assessment of damages than those to whom the right is given by statute.

The Act of Assembly of June 18th, 1836, accords an assessment

[Workman *et al. v.* Mifflin.]

of damages only to "the owner of any land through which a public road shall be opened." The ground-rent landlord is not the owner of the land out of which the rent issues. He has an estate it is true, but it is an estate in the rent, not in the land. The one is incorporeal, the other corporeal. It is only the owner of the land, the corporeal, that can petition for a jury to asseess damages. It is true, that it has been held, that one who holds less than a fee simple in the land, is an owner within the meaning of the statute, but his estate must be a part of the fee, one of the fractions of the unit, necessary with other interests to constitute the entire whole. The estate of the ground-rent landlord is distinct. It is no one of the fractions necessary to make up the entire fee in the land. It would appear to follow, that the damages which the defendants below received, were all that could be assessed, and therefore the landlord is without remedy, unless he has it in the covenant of the tenants. If it be suggested, that the damages awarded constituted a fund to which the owner of the rent was bound to resort, the answer is easy. It is true that road damages are to be applied to the discharge of liens upon the land occupied by the road: Reese *v.* Addams, 16 *S. & R.* 40. The owner is a trustee for the lien-holders, and courts will protect their rights. Now assuming, what does not appear in the case, that the landlord had a right of re-entry, and therefore a lien, and might have taken arrears, due at the time of the assessment, out of the fund, yet he had duplicate securities, the lien, and the covenant of the tenants. He might select either, and his neglect to claim in one does not satisfy his claim, and bar his resort to the other: 9 *Watts* 529. But whatever may have been his rights, as respects arrears due at the time of the assessment, it is clear that he could not have taken out of court the rents subsequently accruing, for which this suit is brought, or the principal of the rest. At law he had no right to it, and in equity the utmost which could have been asked was that a part of the fund should be impounded, sufficient to meet the accruing rents. The defendants having received the money, cannot complain that no such demand was made.

In considering this case, we have not overlooked Cuthbert *v.* Kuhn, 3 *Whart.* 357. That case is authority for all that was decided in it. It is, however, an unwarrantable deduction from it, that a ground-rent is apportioned by opening a street through the land out of which the rent issues. It is impossible to read the case, without the conviction, that it was a mode selected by the parties in which to effect an amicable arrangement. Nor was its object so much apportionment, as substitution of money for the land out of which the rent had been reserved. The tenant appealed to this court as a Court of Equity, admitted that damages had been awarded to her for opening the street, that a part of them had been awarded on account of her liability to the ground-

[Workman *et al. v.* Mifflin.]

rent, offered to pay off the principal of the rent, the just proportion of the ground occupied by the street, and prayed that on payment it might be decreed extinguished, and the landlords be enjoined against proceeding to recover it. Chief Justice GIBSON, in delivering the opinion of the court, admits that the law furnished no ground for relief, but asserts that equity might, under the circumstances, decree the substitution. It was not supposed then, as now, that apportionment or substitution might be effected in an action of covenant, or any where or in any mode, without payment of the entire principal of the ground-rent. Payment of the whole principal was regarded as the foundation of the tenant's equity; payment out of the damages assessed, or out of other property of the tenant. The case is, therefore, no authority for the doctrine that appropriation of the ground by the public, for a highway, without more, without payment of the entire principal, extinguishes the rent. The defendants below neither paid nor offered to pay any part of the principal, and were, therefore, not only without any defence at law, but without any equity.

We have considered this case without reference to the question, not necessarily presented, whether, in Pennsylvania, the heir, as such, is liable upon the covenant of his ancestor, binding himself and heirs. We are far from admitting that any such liability exists, but as it is unnecessary to decide the question, we leave it open for future consideration, should it ever be presented.

Judgment affirmed.