## Girard Trust Co., etc., v. French et al.

*Duane, Morris & Heckscher*, for plaintiff.

*F. F. Truscott, O. C. Broderson* and *J. V. Horan*, for defendants.

LEWIS, P. J., January 18, 1955.—In this action

of assumpsit stemming from a condemnation of real estate by the City of Philadelphia, we are asked to determine the status of an owner of ground rents in such a proceeding.

Originally the matter came before us on the city's rule to show cause why the fund realized from the condemnation should not be paid to it and the School District of Philadelphia in partial satisfaction of back taxes. An answer to the rule was filed by the Girard Trust Company, the owner of the ground rents, as substituted trustee under the will of one Elizabeth Norris. Pending a decision of the issue thus created, the bank brought an action in assumpsit against the City of Philadelphia and the record owners of the real estate, Catherine A. Dunlap and Sarah V. Dorris, in an effort to recoup arrearages due and owing on account of the ground rents. To this complaint, the city filed preliminary objections. The suit was then transferred to our court so that the cause of action in its entirety could be adjudicated by one tribunal. Thus, we have before us plaintiff's complaint in assumpsit and the city's preliminary objections thereto, as well as the petition of the receiver of taxes (now replaced under the Philadelphia Home Rule Charter by the department of collections) for payment of the fund now held in court.

Two fundamental issues are raised by the rule and assumpsit action, and since a common thread ties both together, we shall adjudicate both matters in this opinion.

The first of these questions is whether the Girard Trust Company as the owner of ground rents was entitled to notice of the proceedings before the board of view for the assessment of damages; and the second relates to the priority of the municipal claim *for taxes* over the holder of ground rents reserved by deed prior to the tax delinquency.

No dispute with respect to the facts exists. The record discloses the following series of events prior to this litigation:

By due enactment of June 9, 1947, pursuant to the Act of May 20, 1921, 53 PS §1551, the City Council of Philadelphia condemned certain tracts of land located in the nineteenth ward of the city. Contained in these condemned tracts is one parcel of land upon which certain ground rents had been reserved by deed of the then owner in 1881.

Following the condemnation the record owners, Catherine A. Dunlap and Sarah V. Dorris, were given notice of proceedings before a board of view for the assessment of damages. The owner of the ground rents, Girard Trust Company, trustee under the will of Elizabeth Norris, deceased, did not receive notice of the hearings.

The board of view, upon competent evidence, made an award in the amount of $16,500 to the record owner. A title search later revealed that $15,276.95 in taxes, as well as ground rents owing to the Girard Trust Company, trustee, were unpaid, and hence the owners could not give a clear title policy to the city. Upon petition, the court allowed certain counsel fees from the damages awarded and ordered the balance paid into court. The Girard Trust Company was given notice of these and all subsequent proceedings.

With respect to the first question it is manifest that passage of a condemnation ordinance by City Council vests title to the land in the municipality, subject to the constitutional mandate that just compensation be paid (Pennsylvania Constitution, article XVI, sec. 8) and that in such cases damages are to be assessed by a board of view. All parties who had an interest in the land prior to the condemnation have their rights transferred unimpaired to the fund created by the board and cease to have any further interest in the

land itself: Philadelphia Appeal, 364 Pa. 71 (1950), and cases therein cited. Philadelphia Drainage Case, 360 Pa. 589 (1949) ; Fidelity-Philadelphia Trust Company, Trustee, v. Kraus Exec., et al., 325 Pa. 581 (1937) ; Woods Run Avenue, 43 Pa. Superior Ct. 475 (1910) ; Jackson v. Pittsburgh, 36 Pa. Superior Ct. 274 (1908). See In re Twenty-Fifth Street, 18 Weekly Notes of Cases 318 (1886).

Plaintiff contends that the proceedings are null and void because it was not given notice of the original proceedings before the board of view. The bank submits it is a matter of law that it was entitled to such notice so that at its option it might appear and offer evidence relating to the value of the land. It admits the adequacy of the amount awarded and does not claim that it was prejudiced because of lack of notice.

Our examination of the law of Pennsylvania, however, has not revealed any precedent squarely deciding the issue and therefore we believe there should be an adjudication of this point, which has been properly raised, so that the law may be settled.

The City of Philadelphia proceeded under the Act of May 20, 1921, P. L. 957, 53 PS §1551, in condemning the premises out of which plaintiff's ground rents issued. This act gives cities the power to acquire property through condemnation proceedings for the purpose of erecting playgrounds, etc., and while it contains no specific provision for the giving of notice, does provide in section 2 as follows:

"All proceedings for the assessment of damages for property taken under the provisions of this act shall be had in the same manner as is now provided by law for the taking of property for public improvement in such cities."

A review of the condemnation statutes in force at the passage of this act indicates the legislature intended to incorporate by reference sections 1 and 2 of

the Act of May 16, 1891, P. L. 75, 53 PS §§391 to 394. This enactment was the parent statute empowering municipal corporations to acquire land by condemnation and constitutes the most comprehensive expression by the legislature on that subject. Accordingly, the term "as is now provided by law" in the Act of 1921 should be construed to relate back to the prior legislation. Section 2 of the Act of 1891 provides:

"Notice of the time and place of meeting shall be given, in the manner provided by law for the service of a summons in a personal action, upon all parties allowed damages or assessed benefits."

Thus, it is apparent that Girard Trust Company's right to notice is contingent upon its right *to receive damages* in the proceedings.

In Workman et al. v. Mifflin, 6 Casey 362 (30 Pa. 362, 1858), the court, in deciding the effect of a ground rent landlord's failure to proceed against the fund awarded the tenant in a condemnation of part of the land from which the rent issued, said:

"The ground-rent landlord is not the owner of the land out of which the rent issues. He has an estate it is true, but it is an estate in the rent, not in the land. The one is incorporeal, the other corporeal. It is only the owner of the land, the corporeal, that can petition for a jury to assess damages. It is true, that it has been held, that one who holds less than a fee simple in the land, is an owner within the meaning of the statute, but his estate must be a part of the fee, one of the fractions of the unit, necessary with other interests to constitute the entire whole. The estate of the ground-rent landlord is distinct. It is no one of the fractions necessary to make up the entire fee in the land."

In In re Twenty-Fifth Street, supra, the court of quarter sessions held the ground rent owner was not entitled to an award of damages by a jury in compensation for his loss upon condemnation. There the court stated:

"The propriety of awarding the value of the land taken to the ground-tenant, and of leaving the distribution of the amount so awarded to be worked out subsequently, cannot be doubted."

Hence the court concluded, after a review of the law governing respective rights of the ground rent owner and ground tenant, that the former has no standing to claim damages in the proceeding in that the award to the tenant contemplates full value of the land. Compensation of the owner of the ground rent must be realized from the fund so awarded.

Although the decision of the court of quarter sessions in that case is not binding, we concur in the result and reasoning. We agree that a ground rent owner is not a person allowed damages in a board of view proceeding as that term is defined by the controlling statutes. While it is true that a ground rent is something more than a lien and is different in legal effect from a mortgage, yet we do not think that it rises to the status of an interest requiring a governmental body, in exercising the power of eminent domain, to afford it special treatment. See Philadelphia Drainage Case, supra; Jackson v. Pittsburgh, supra. Ground rent interests like mortgage interests are fully protected by the prevailing practice of requiring the record owner of land condemned by a city to produce an unencumbered title policy before any part of the award is paid. It was the owner's inability in this case to produce an unencumbered title policy that resulted in the payment of the fund into court and in the subsequent proceedings in which plaintiff as ground rent owner has had its opportunity to litigate its claim. Plaintiffs have cited Voegtly v. Pittsburgh and Fort Wayne Railroad Co., 2 Grant's Cases 243 (1858), and Cuthbert v. Kuhn, 3 Wharton 356 (1838), in support of its position. These cases are readily distinguishable and do not alter our decision. The Voegtly case

merely held that a condemnation of part of the land from which a ground rent arises does not automatically extinguish or apportion the rent. The Cuthbert case stands for the proposition that after condemnation of part or parcel from which a ground rent issues, a tenant, upon paying part of the award to his landlord, may invoke equity to compel a partial satisfaction of the rent. Nothing in these decisions stands for the proposition that the interest of the ground rent holder, a right stemming from feudal land law and known classically as an incorporeal hereditament, rises to the dignity of an interest contemplated by the statute governing board of view procedures. The real parties in interest are the beneficial owners of the land, and just as a mortgagee who, indeed, has an interest, is not entitled to appear before the board of view, so we hold that the owner of a ground rent is likewise not entitled to such notice or standing.

With respect to the second question, the priority of the city and school district for unpaid taxes, it is manifest that legislation delineating priorities of creditors is constitutional. The question then is whether the Act of 1923, the governing statute, applies to this situation. Our analysis of the law leads us to the conclusion that it does and that the city and school district have priority over the holder of a ground rent interest.

The Act of May 16, 1923, P. L. 207, 53 PS §§2021 to 2061, in section 2, provides:

"All taxes which may hereafter be lawfully imposed or assessed on any property in this commonwealth . . . shall be and they are hereby declared to be a first lien on said property, together with all charges, expenses and fees added thereto."

A careful reading of the act compels the conclusion that the legislative intent that right of priority be given to taxes applies to the whole act, and should be considered the public policy of the State on the subject.

The title of the Act of 1923, supra, indicates that the purpose of the legislature was to provide a comprehensive program on the subject of taxes and municipal liens. This title reads as follows:

"Providing when, how, upon what property, and to what extent, liens shall be allowed for taxes and for municipal improvements, for the removal of nuisances, and for water rents or rates, sewer rates, and lighting rates; for the procedure upon claims filed therefor; the methods for preserving such liens and enforcing payment of such claims; the effect of judicial sales of the properties liened; the distribution of the proceeds of such sales, and the redemption of the property therefrom; for the lien and collection of certain taxes heretofore assessed, and of claims for municipal improvements made and nuisances removed, within six months before the passage of this act; and for the procedure on tax and municipal claims filed under other and prior acts of Assembly."

The body of the enactment contains a detailed treatment of the priorities and procedures thus outlined, and concludes with the following statement of intent by the legislature:

"It being intended that this Act shall furnish a complete and exclusive system in itself, so far as relates to taxes and municipal claims . . ."

Our Supreme Court, in applying a priority given to taxes in sections 2 and 31 of the act, has held that a lien for municipal taxes is to be fully paid before a ground rent, created as here many years before the passage of the act or the imposition of the tax, even if such payment works a discharge of the ground rent without any compensation to the ground landlord. See Art Novelty Manufacturing Company, Inc., v. Kenworthy, 370 Pa. 471 (1952), and Di Sante v. Smith et al., C. P. No. 2 of Philadelphia County, December term, 1948, no. 2832 (opinion by President Judge Gor-

don). The reasoning and conclusion of these opinions are applicable to the distribution of the fund now before us.

It is true that in the instance cited above the fund to be distributed had been realized from a judicial sale, while the fund before us is the product of a condemnation. However, we do not deem this distinction to be controlling in view of the broad declaration of public policy that taxes "imposed or assessed on any property . . . shall be a first lien thereon" contained in section 2 of the Act of 1923, supra, and the fact that the legislature clearly intended to set up a comprehensive and consistent plan embracing the collection of taxes upon property.

There is no provision or language in the act which indicates that the legislature intended priority of tax claims exclusively in judicial sales. On the contrary section 31 evidences the intent of the legislature to avoid a situation whereby a property of substantial value could be sold for the satisfaction of a small amount of taxes without adequate notice being given to all parties having an interest. See Hess et ux. v. Westerwick, 366 Pa. 90 (1950), and Ross Appeal, 366 Pa. 100 (1950). No such possibility exists in condemnation proceedings or in the subsequent distribution of the award. The amount realized here did not depend upon the whim of bidders at a competitive sale; rather it was fixed by a quasi-judicial body on competent evidence of value. The distribution of the fund realized is to be made in accordance with the priority as established by the record of title.

Were we to accept plaintiff's contention that the provisions of the act relating to judicial sales should be considered as apart from the remaining sections of the act, we would ignore the fundamental concept that substantive rights are to be determined by procedure only where absolutely necessary. For by following

plaintiff's reasoning we would be holding, in effect, that the city's election to proceed against the land in question by condemnation divests it of a substantive right to priority for payment of taxes which would have been effective upon a judicial sale.

For the foregoing reasons, we make the following

*Order*

And now, to wit, January 18, 1955, it is ordered and decreed that the demurrer of the City of Philadelphia to plaintiff's complaint in assumpsit sur ground rents, is sustained, and the rule to show cause why the claim of W. Frank Marshall, Receiver of Taxes for the City of Philadelphia and of the School District of Philadelphia, should not be allowed in the sum of $15,267.95 and the balance of the fund in court, to wit, $14,250, be paid on account thereof, is made absolute.