Commonwealth of Pennsylvania, Department of Transportation *v.* Louis and Anna G. Haydu, M. F. Fetterolf Coal Company, Inc., Helen S. Wagner and Jane Hamer Cooper, Executrix of Kerby N. Hamer Estate.

Argued February 18, 1971, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

 

*Ralph B. Pinskey,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Fred Speaker,* Attorney General, for appellant.

*Joseph N. Cascio,* with him *Fike, Cascio & Boose,* and *Frank A. Orban, Jr.,* for appellee.

Opinion by Judge Rogers, April 14, 1971:

This appeal is from judgments entered upon a jury verdict after trial of an eminent domain case.

By deed dated May 6, 1948, Lewis Gerosin and Florence, his wife, granted and conveyed unto Kenneth H. Wagner "all that coal known and designated as bed 'E' and all coal above bed 'E' lying, being in, or upon" a tract of land in Conemaugh Township, Somerset County. On May 7, 1948, Kenneth H. Wagner and Helen S., his wife, granted and conveyed unto Kerby N. Hamer an undivided one-half interest in said coal by description identical with that in the Gerosin-Wagner deed. On March 30, 1962, Lewis Gerosin, widower, executed and delivered his deed conveying unto Anna H. Haydu and Louis, her husband, the tract of land from which the "E" seam of coal had been conveyed to Wagner. Following the recital in the deed to the Haydus are the words, "This document may not sell, convey, transfer, include or insure the title to the coal and right of support underneath the surface land described or referred to herein". Kenneth H. Wagner died and Helen S. Wagner was granted letters testamentary. By lease and supplemental lease dated June 8, 1966, Kerby N. Hamer and Marion R., his wife, and Helen S. Wagner, executrix of the will of Kenneth H. Wagner, leased as lessors to M. F. Fetterolf Coal Company, Hamer's and, by representation, Wagner's coal. On either October

22, or December 22 or December 27, 1966,[1] the Commonwealth of Pennsylvania filed a declaration of taking the effect of which was to appropriate and condemn for highway purposes, 19.539 acres of the total of 56 acres owned by the Haydus. The limited access road constructed within the right-of-way thus taken bisects the property leaving 15.124 acres on one side and 21.503 acres on the other.

Before the trial by the traverse jury, Kerby N. Hamer died and he was succeeded on the record by his executrix, Jane Hamer Cooper. Further, prior to trial the interest of Kenneth H. Wagner in the coal was awarded to Helen S. Wagner by the Orphans' Court of Somerset County. Hence the parties to the proceedings were the Commonwealth as condemnor; and Anna G. and Louis Haydu, surface owners; and Helen S. Wagner, co-tenant of the coal; Janne Hamer Cooper, executrix under the will of Kerby N. Hamer, deceased co-tenant of the coal; and M. F. Fetterolf Coal Company, Inc., lessee of the coal, all condemnees.

Pre-trial conferences were conducted at which the trial judge advised counsel of his opinion and intended ruling that *Section* 507(a) of the *Eminent Domain Code of 1964,* Special Session, June 22, P. L. 84, Art. I, Sec. 101, 26 P.S. 1-101, was not applicable in this case because there were here two fee simple estates, one in the surface and the other in the coal and that, therefore, while the claims of the surface owners and the coal owners might be tried in the same proceeding, they

---

[1] Both briefs give the date as October 22, 1966. The petition for viewers avers that the declaration was filed December 27, 1966. The jury of view found the date to be December 27, 1966. The trial judge charged the jury that the taking occurred December 22, 1966, but in his opinion accompanying the order refusing a new trial states that the petition was filed October 22, 1966. The declaration was not returned to this court in response to our writ nor is a copy of any docket entry for this basic pleading furnished us.

would be assessed independently of each other and not apportioned from an amount determined as the total damages to the property. This the trial judge believed followed as a result of the Pennsylvania cases holding that a conveyance of minerals creates a fee simple estate in the minerals. It followed from this, in the trial judge's view, that the mineral owner held more than "an interest in the property; that he possessed a separate property." At the trial which ensued, the judge's rulings were consistent with this view. The parties claiming the coal (Wagner, Cooper and Fetterolf) were permitted to adduce evidence as to the before and after value of their mineral holding and the owners of the surface (Haydu) as to the before and after value of their land, each without reference to the total amount of damages to the property. The jury was instructed to bring in a verdict described by the trial judge as "double-barreled"; that is, one fixing the damages to the so-called coal estate[2] and the other to the so-called surface estate. The Commonwealth as condemnor made proper objections and took proper exceptions to the trial judge's rulings and instructions, contending that 507(a) of the *Eminent Domain Code* was applicable and that the jury should be instructed first to fix the total damage to the whole property, surface coal and all other attributes, and then apportion the damages between the owners of coal and surface. Somewhat inconsistently, the trial judge permitted the Commonwealth's expert valuation witness to testify as to his opinion of the before and after value of the total property including the coal. However, the same valuation expert was not permitted to state the price at which a 40-acre tract underlain with coal and otherwise com-

---

[2] The trial judge severed for later and separate trial the apportionment of damages to the coal among the parties claiming interests therein, Wagner and Cooper as owners and Fetterolf, Inc., as lessee.

parable to the subject property was sold within a year prior to the date of condemnation, because he was unable with regard to the comparable property to state the "depth of the coal, or quality or quantity, or whatever his assumptions are."

Upon a verdict slip provided under instructions of the trial judge, over objections of the Commonwealth, the jury recorded the following verdict: "For Louis and Anna G. Haydu, $23,500; For Helen S. Wagner, Jane Hamer Cooper, Executrix, and Fetterolf Coal Company, Inc., $25,000."

At issue here in the broad sense is whether there is to be engrafted upon the *Eminent Domain Code* an exception to its plain wording; an exception, moreover, the creation of which would in our judgment harmfully affect an important improvement in the law. Section 507(a) of the *Code*, 26 P.S. 1-507(a) provides as follows: "(a) The claims of all the owners of the condemned property, including joint tenants, tenants in common, life tenants, remaindermen, owners of easements, and all others having an interest in the property, and the claims of all tenants, if any, of the property, shall be heard or tried together and the award of the viewers or the verdict on appeal from the viewers shall first fix the total amount of damages for the property, and second, apportion the total amount of damages between or among the several claimants entitled thereto."

As stated by the Joint State Government Commission in its Report, "the purpose of this section is to avoid several suits for damages for the same property."

In *Porter v. Commonwealth*, 419 Pa. 596, 215 A. 2d 646 (1966), the lessee of limestone underlying five parcels of land each in separate ownership sought to have his claim for damages resulting from condemnation of the five tracts assessed in one proceeding. The trial court construed Section 507(a) as prohibiting assess-

ment of the lessee's damages in this fashion. On appeal the Supreme Court affirmed, remarking, *inter alia,* "Appellant, by relying on cases giving certain lessees of minerals a fee simple therein, in effect argues that 'property' should be defined by the area of his ownership. We believe, however, that the legislature intended the term to mean that area as defined by the fee in the surface, as recorded." 419 Pa. 598, 215 A. 2d 648. And again "Furthermore, the language used in Section 507 indicates the legislature understood 'property' to refer to the area defined by the fee in the surface. The examples given of interests required to be joined are such as one would find in a fee of the surface. While there is case law denominating certain mineral lease interests as a fee simple in the minerals, these cases are limited to interpreting the meaning of so-called lease agreements. The narrow scope of such cases precludes their governing our interpretation of the legislative intent of the Eminent Domain Code." 419 Pa. 599, 215 A. 2d 648. *Porter v. Commonwealth, supra,* disposes of this case and requires vacation of the judgments here entered.

However, as the learned court below has expended considerable effort distinguishing *Porter v. Commonwealth, supra,* it may be appropriate to enlarge on the subject of this case here. The distinction found by the court below is that while here the coal was conveyed by deed without reservation of interest in the grantor, in *Porter* it was transferred by lease. As a result, the lower court concludes, we have here two separate fee simple interests, and hence, for purposes of Section 507(a) two condemned properties; whereas the lease in *Porter* created only an interest in each of the five condemned properties. In support of this theory the lower court cites numerous cases construing instruments conferring mineral rights, none, however, involving the assessment of damages resulting from condemnation.

Concerning *Porter v. Commonwealth, supra,* the lower court comments: "The Court [Supreme Court of Pennsylvania] did not have before it a fee simple absolute in coal . . . . Although the Court did not discuss the precise nature of appellant's estate under his 'lease', presumably it was subject to the usual possibility of reverter which would require appellant's joinder in each of the five viewer proceedings which the court concluded should be held. The issue in the instant case of the standing of a fee simple absolute in underlying coal was neither raised nor decided in Porter." Although the opinion of the Supreme Court seemed clear enough, we have read the briefs and record in *Porter* and the Supreme Court *did* have before it a fee simple absolute in minerals; and the standing of a fee absolute in underlying minerals was not only raised and decided, it was the *only* issue raised and the *only* issue decided. In *Porter,* the appellant's argument was divided into two parts as follows:

"I. A coal or mineral lease, although in the form of a lease and although a term of years is prescribed, conveys a fee simple estate to the 'lessee' if he is given dominion over all the minerals. Each of the agreements gave the appellant the exclusive rights to remove all limestone from the premises described, required down payments or contained covenants to mine with due diligence, and provided for the payment of minimum or guaranteed royalties. Each gave him absolute dominion over all the limestone and, therefore, vested in him a fee simple title to it.

"II. As the owner in fee simple of all of the limestone on an assemblage of five tracts totalling altogether more than 190 acres and all being used as a limestone mining and processing operation, the appellant is entitled to have the damages, arising from a con-

demnation of part of the property assessed as if such tract were one parcel."

Appellant's conclusion was as follows: "The five agreements entered into by the appellant were typical Pennsylvania mining leases giving him the exclusive right to remove all of the limestone from the properties and obligating him to pay guaranteed royalties as well as to make down payments or to mine with due diligence. They conveyed to him a fee simple title to the limestone, conditioned upon its removal within the time specified.

"As the fee simple landowner of five contiguous tracts of minerals, Sechan is entitled to have his damages assessed in one proceeding as if such tract were one parcel."

The appellee in *Porter*, argued . . . "it must be noted that the appellee's position is that it is immaterial whether Sechan, the common mineral lessee, actually owned the minerals in question in fee simple. Rather the appellee's contention is that it is common ownership of the surface which is necessary." Its conclusion was in part: "The doctrine of fee simple ownership of minerals should be limited to the field of mineral law, from whence it derived and should not be extended to the law of eminent domain where it is neither practical or logical."

The Supreme Court agreed with the appellee. On its facts *Porter* is a stronger case for recognizing the mineral interest as a separate property under 507(a) than the instant suit. There the limestone was being mined from five tracts as an integrated operation; the difficulty in proving damages to such in five separate proceedings is apparent. Here the coal owners' operations are confined to the one property condemned.[3]

---

[3] *Werner v. Commonwealth*, 432 Pa. 280, 247 A. 2d 444 (1968) is an instance of a trial conducted in accordance with 507(a) in where there was both a "surface fee" and a "mineral fee".

The appellees here, as did the mineral owner in *Porter*, argue that if the words "condemned property" in Section 507(a) mean property as defined by the surface, they will be deprived of due process in pursuit of their constitutional guarantee of just compensation. However, in a trial conducted in the fashion prescribed by Section 507(a), each appellee may show the value of his interest and the effect of the condemnation on such interest. As a condemnee,[4] each has the same rights throughout the proceedings as any other condemnee. Section 507(a) merely requires that the claims be tried together and that the jury first fix the total damages for the property and second, apportion this total among the claimants. As Mr. Justice COHEN writes, "The procedure resulting from the new Code does not deprive the appellant of due process. In each view proceeding he may show the value of his interest in the property . . .". 419 Pa. 599, 215 A. 2d 648.

It must be borne in mind that we are here interpreting the words of the legislature, not trying title to property. The legislature plainly meant by 507(a) to promote the speedy and efficient disposition of eminent domain cases and incidentally to place the constitutional limit of just compensation on each parcel condemned. Ghostly formulas culled from ancient authorities on land tenure are of little assistance in determining legislative intent in 1964.

To declare that because by the law relating to estates in property there is here created a fee simple title to coal, the legislature did not intend the words "condemned property" in Section 507(a) to mean the area as defined by the surface, is simply to beg the question. For instance, a ground rent has been held to be an interest in land distinct and separate from the

---

[4] *Eminent Domain Code*, 1964 Special Session, June 22, P. L. 84, Art. I, Section 201(2), 26 P.S. 1-201(2).

land out of which it issues; it is considered real estate, *Pronzato v. Guerrina,* 400 Pa. 521, 163 A. 2d 297 (1960) ; and the owner of a ground rent posseses a separate estate in fee in the land. 14 *P.L.E.,* page 97, Section 11 of *Estates in Property.* Nevertheless, the Supreme Court had no difficulty deciding more than 100 years ago that the ground rent landlord is not an owner to whom damages can be awarded in condemnation proceedings. *Workman v. Mifflin,* 30 Pa. 362 (1858). See also *Girard Trust Company v. French et al.,* 4 D. & C. 2d 427 (1955).

The contention that the presence or absence of the "possibility of reverter" of minerals should be a consideration in determining the applicability of Section 507 (a) has no more merit than the suggestion that the name "fee simple title" attached to an interest should have significance. For instance, in *Commonwealth v. Solley,* 384 Pa. 404, 121 A. 2d 169 (1956), a lessee of clay for the term of *one year* was held to be an owner of land within the meaning of a statute imposing liability on land owners for injuries to highways caused by subsidence. A lease of coal for *seven years* was held to be an absolute conveyance not only of the coal but also of appliances connected with the mining and transportation of the coal. *Montooth v. Gamble,* 123 Pa. 240, 16 A. 594 (1889). In *Gilberton Fuels, Inc. v. Philadelphia and Reading Coal and Iron Company,* 342 Pa. 192, 20 A. 2d 217 (1941), a lease of coal for *fifteen years* was held to be a conveyance of the coal for all purposes including taxation. Furthermore, from a practical standpoint, it would be less difficult, following the procedure prescribed by Section 507(a) of the *Eminent Domain Code,* to determine and apportion damages to a mineral interest where no reverter is possible than where such possibility exists.

*Dilts v. Plumville Railroad Company,* 222 Pa. 516, 71 A. 1072 (1909), relied on by the appellee, is not

authority for a view contrary to that expressed herein, first, because it antedates the *Eminent Domain Code* and second, because it really holds only that each the surface and mineral owner may give evidence as to the value of his holding. The *Eminent Domain Code* preserves this right. Further, we note that the Joint State Government Commission comments with reference to Section 402[5] . . . "This section changes existing law and represents a distinct trend away from the former concept of condemnation in Pennsylvania, which has always been concerned with the property interest of the person rather than with the property. In other words, condemnation under this provision is now a proceeding in rem."

In any case, the determination of whether a particular instrument transferring mineral rights is a sale absolute or conditional sale or a lease or a mere license or whether it creates a corporeal or an incorporeal right is difficult enough when necessary. See *Hummel v. McFadden*, 395 Pa. 150 A. 2d 856 (1959). It should not be required in eminent domain proceedings in the face of clear legislative purpose to the contrary and where the right of the owner to establish and obtain just compensation is fully protected.

As stated by Mr. Chief Justice BELL in a concurring opinion in *Porter v. Commonwealth, supra,* "The Legislature clearly intended the *claimants* and the term 'property' to mean and include all persons who claim a fee and all persons who are tenants or remaindermen or owners of easements, as well as all other persons who have any interest in the *property which was condemned*". 419 Pa. 600, 215 A. 2d 649 (Emphasis in original.)

The judgments are vacated and the record is remanded for a new trial.

---

[5] 26 P.S. 1-402.

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. The majority correctly accepted the integrated use doctrine promulgated in *Porter v. Commonwealth*, 419 Pa. 596, 215 A. 2d 646 (1966). The doctrine envisions, where there is both a surface fee and a mineral fee, a single trial conducted in accordance with Section 507(a) of the Eminent Domain Code, 26 P.S. §1-507(a). Such a trial was approved in *Werner v. Commonwealth*, 432 Pa. 280, 247 A. 2d 444 (1968), and such a trial was conducted in the instant case, even though the judge below ruled that Section 507(a) did not apply as to a single verdict for the total amount of damages to both the surface fee and mineral fee. However, after relying on *Porter v. Commonwealth, supra*, the majority here orders a new trial. It is my view that the lower court properly tried together the claims of the surface fee owners and those of the mineral fee owners.

The lower court, in the face of the language of Section 507(a), did commit harmless error in instructing the jury to return separate verdicts for the respective owners of the surface fee and mineral fee. The jury verdict should have been for the total amount of damages to both the surface and mineral rights in the property. Thereafter, the total amount of damages should have been apportioned by the same jury among the several claimants entitled thereto. The property is confined to that area as defined by the fee in the surface. See *Porter v. Commonwealth, supra*.