# State Highway Route No. 72.

*Road law—State highways—Change of grade without change of
lines—Act of May 31, 1911, P. L. 468.*

The Commonwealth of Pennsylvania is not liable for damages to
the owners of property abutting upon a State highway so established
by virtue of the Act of May 31, 1911, P. L. 468, by reason of dam-
age or injury caused to said property in the process of the improve-
ment or reconstruction of such highway involving only a change
or alteration of the former grade without having taken or appro-
priated any land, and without having changed the horizontal po-
sition of the centre or side lines of the highway.

Argued Oct. 14, 1918.  Appeal, No. 38, April T., 1918,
by Commonwealth of Pennsylvania, from order of Q. S.
Allegheny Co., Nov. Sessions, 1914, No. 2, dismissing
exceptions and confirming absolutely report of viewers
In re State Highway Route No. 72.  Before ORLADY,
P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and
WILLIAMS, JJ.  Reversed.

Exceptions to report of viewers.

The viewers found the facts to be as follows:

1. That the petitioners, Ellen K. Watson, H. C. Shaw and George E. Shaw, are the owners of a parcel of land situate in Shaler Township, Allegheny County, Pennsylvania, having a front of 532 feet on State Highway Route No. 72 (formerly the Allegheny and Butler Plank Road) and extending back a distance of 300 feet more or less, and having erected thereon a two-story brick dwelling house and other improvements appurtenant thereto.

2. That the Allegheny and Butler Plank Road was originally constructed by the Allegheny and Butler Turnpike Company (incorporated under Act of Assembly approved the 5th day of May, 1841, P. L. 342, and the amendments and supplements thereto); that it was maintained by said company until about 1904, when it was taken over by the County of Allegheny by condemnation proceedings, under the acts of assembly in such case made and provided, and was subsequently maintained by said county until, in accordance with the provision of Act of Assembly, approved May 31, 1911, P. L. 468, it became part of State Highway Route No. 72 from Pittsburgh to Butler.

3. Since its appropriation as a State highway route said road has been maintained by the State Highway Department, which has also reconstructed and improved the same, and in the course of reconstruction has elevated the grade thereof without changing the horizontal position of the center or side lines, so that the surface of the road as reconstructed is from about three and a half feet (at the southerly line of said petitioners' land) to about five and a half (at the northerly line of said land) feet higher than before said reconstruction.

4. That the property of petitioners fronting on said road has been damaged by said elevation of the grade thereof.

On these findings of fact the viewers refused to award damages. Exceptions to their report were sustained

and the proceedings were referred back to the viewers with directions to assess damages. The viewers subsequently filed a supplemental report awarding $2,000 damages. Exceptions to this report were overruled.

*Error assigned* was in overruling exceptions to the viewers' supplemental report:

*J. Charles Adams,* with him *Francis Shunk Brown,* Attorney General; *William L. Keller,* Deputy Attorney General, and *James L. Adams,* for appellant.—The Commonwealth is not liable for damages: Jamison v. Cumberland County, 48 Pa. Superior Ct. 32; Saeger v. The Commonwealth, 258 Pa. 239.

*John J. Heard,* with him *Samuel McClay* and *Reed, Smith, Shaw & Beal,* for appellees.

OPINION BY PORTER, J., January 3, 1919:

The State Highway Department having, under the authority conferred by the Act of May 31, 1911, P. L. 468, undertaken the construction, reconstruction and improvement of the State highway designated in the statute as "Route 72. From Pittsburgh to Butler," raised the grade of the road in front of the property of the appellees, the latter presented a petition to the court below praying for the appointment of viewers to ascertain and assess the damages alleged to have resulted from the work. The viewers reported in due form, finding facts and conclusions of law, including a finding that the State Highway Department had in reconstructing the road "elevated the grade thereof without changing the horizontal position of the center or side lines, so that the surface of the road as reconstructed is from three and a half feet to about five and a half feet higher than before said reconstruction." The report also found that the property of the petitioners had been damaged by the elevation of the grade of the road. The conclusions of law contained

in the report may be thus briefly stated: (1) That the 16th section of the statute, providing for the ascertainment and assessment of damages when in the improvement of a State highway "a change of existing lines and location is necessary and damage is likely to result to abutting property" refer only to damages caused by a change in location; (2) That the statute does not give to the owners of abutting property the right to recover damages from the Commonwealth for injuries caused by a change of grade only in said highway, nor is such a right granted by the Constitution of the State, nor by any other statute. And (3) that the viewers were without jurisdiction to assess damages. Exceptions were, by the petitioners, filed to the report, none of which challenged the findings of fact but excepted to all the conclusions of law. The court below being of opinion that the 16th section of the statute authorized a recovery of damages by an owner of abutting property when there was any change of grade in a State highway, even in cases where there was no change of location, sustained the exceptions, referred the proceedings back to the viewers and directed them to proceed to assess the damages. The viewers, in obedience to this instruction, subsequently reported that the property was damaged to the amount of two thousand (2,000) dollars. The Commonwealth filed exceptions to this supplemental report, which exceptions the court overruled and confirmed the report absolutely. The Commonwealth appeals. The question is thus presented: Is the Commonwealth of Pennsylvania liable in damages to owners of property abutting upon the State highway, so established by virtue of the Act of May 31, 1911, P. L. 468, by reason of damage or injury caused to said property in the process of the improvement or reconstruction of said highway involving only a change or alteration of the former grade, without having taken or appropriated any land, and without having changed the horizontal position of the center or side lines of the highway?

It was early decided in this State, and the doctrine has frequently been reasserted that the Commonwealth is not liable for damages occasioned by the appropriation of private property for the construction of public highways, nor for injuries incidentally resulting therefrom, in the absence of legislation providing for compensation. Even the owner of land, taken for a public highway, is entitled to compensation only as a thing of grace, not of constitutional right. The allowance of six per cent. in all grants, as well by the original proprietaries as by the Commonwealth was itself compensation: Workman v. Mifflin, 30 Pa. 362. This referred to land in its natural state, where buildings are pulled down, or other valuable improvements destroyed, in the making of a new road, the right of compensation is guaranteed to the owner by the Constitution: Plank-Road Company v. Thomas, 20 Pa. 91. The right of an owner to recover damages for injury to his property resulting from the opening and construction of public highways was one which it was within the power of the legislature to grant and remedies have in this manner been provided from an early period in our history. The general road law of the State at present in force is the Act of June 13, 1836, P. L. 551, and its supplements. The seventh section of that statute provides that: "The owner of any land through which a public road shall be opened as aforesaid, may within one year from the opening of the same, apply by petition, to the Court of Quarter Sessions of the proper county, setting forth the injury which he or she may have sustained thereby, and thereupon, the said court shall appoint six disinterested persons to view the premises and assess the damages, if any, which such petitioner may sustain." The eighth section provides for the making of a report and approval thereof and the payment of the damages by the county treasurer out of the county stock, to the party thereto entitled. The ninth section requires the viewers, in assessing the damages, to take into consideration the advantages derived from such road passing through the

land of the complainant. Soon after this statute became the law the question was raised whether an owner was entitled merely to the value of the land occupied by the road or was entitled also to have considered the injury to the land not taken, and it was held, in Newville Road Case, 8 Watts 172, that "whatever may, be the nature of the loss or damage which the owner of land sustains by the road passing through his land, he is entitled to be compensated for it and it cannot be pretended, that occupying his land for a public road and lessening the value of the remainder is not a damage to him." Chief Justice BLACK, in Plank-Road Company v. Thomas, supra, said: "From all these statutes, taken together, it results that a person upon whose land a turnpike or plank-road is located, may recover damages to an amount which, if added to the present value of his land, would make it worth as much as it was before the road was made. In other words, he may lawfully demand compensation for all his land appropriated, as well as all his improvements destroyed, deducting therefrom the benefits and advantages which he derives from the road, and the additional value given by it to his property." It has been repeatedly held under this statute that the property owner must recover his damages for the location of the road in the manner required by the statute and that he cannot recover damages for a subsequent change in the grade of the road, or reconstruction thereof which does not involve taking of land: see cases cited in Jamison v. Cumberland County, 48 Pa. Superior Ct. 32. The provisions of Article XVI, Section 8, of the Constitution, requiring municipal and other corporations and individuals invested with the privilege of taking private property for public use to make compensation for property taken, injured or destroyed by the construction or enlargement of their works, have no application to an exercise of the right of eminent domain by the State in its sovereign capacity, acting through one of its executive departments: Jamison v. Cumberland County, 234 Pa. 621.

The legislature by the Act of April 15, 1903, P. L. 188, introduced the policy of extending State aid to counties and townships in the construction and maintenance of highways, and in that statute provided for compensation to owners of property damaged by any change of grade of the highway. This statute was in substance reënacted by the Act of May 1, 1905, P. L. 318, which provided for the payment of damages to the owner of property injured by any change in the grade or by the taking of any land, by the counties. These are the only statutes which by express words or necessary implication gave to the owners of abutting property the right to recover damages for a change in the grade of a State or township road prior to the Act of 1911. These statutes were repealed by the Act of June 8, 1907, P. L. 505, which eliminated any reference to damages resulting from a change of grade, and this court in Jamison v. Cumberland County, 39 Pa. Superior Ct. 335, held that there could be no recovery of damages for a change of grade of a road made a State-aid highway subsequently to the approval of the statute last mentioned. It must, therefore, be accepted as settled law, that the change of grade of a road by the Commonwealth or a township is not an injury for which an owner of abutting land can recover in the absence of special legislative provision entitling him to do so. These principles do not seem to be disputed, and it would not have been necessary to restate them except to get clearly before our view the point from which we must approach the construction of the Act of May 31, 1911, P. L. 468.

This statute introduced a new policy of the State with regard to many of its public highways, which are taken over by the State and are to be reconstructed and maintained by it without the intervention or assistance of the counties or townships. Among the roads so taken over was "Route 72. From Pittsburgh to Butler......Commencing at a point on the boundary line of the City of Pittsburgh, and running over Route 70 to Etna; thence

by way of Bakerstown to a point on the dividing line between Allegheny and Butler Counties; thence by way of Maghar into Butler, Butler County." The roads so taken over were existing roads, but when taken over they became State roads. The property of the appellees was situate in Shaler Township and abutted upon the line of the roads so taken over by the State. The eighth section of the statute contained the following provisions: "Whenever in the construction, reconstruction, maintenance, and repair of any of the State highways it shall appear to the commissioner that any part or portion of a State highway, as now defined and described in this act, is dangerous or inconvenient to the public travel, in its present location,......or that the expense to the Commonwealth in the construction, building, rebuilding, maintenance, and repair thereof would be too great or unreasonable, and could be materially reduced or lessened by a divergence from the road or route; the commissioner is hereby empowered to divert the course or direction of the same; and he may diverge from the line or route of same as herein described, in such direction or directions as in his discretion may seem best, in order to correct said danger or inconvenience or lessen the cost to the Commonwealth." This is the only section of the act which authorizes the State Highway Department to "diverge from the line or route" of this road as described in the statute. But the language used is certainly broad enough to warrant a departure from the lines or location of the old road, in such places as the commissioner in his discretion deemed advisable. It is proper to add that such divergence required the approval of the Governor. The material provisions of the sixteenth section of the statute are as follows: "Before the commissioner shall undertake the construction, reconstruction or improvement of any State highway on the plan of the State highways, wherein a change of existing lines and location is necessary and damage is likely to result to abutting property, he shall, when possible, enter into an

agreement with the owner or owners of said property as to the amount of damage to be paid to said owner or owners by the State; or in case an agreement satisfactory to the commissioner and said owner or owners cannot be made, the commissioner may proceed with the work of construction, reconstruction, or improvement; and the owner or owners of said property, damaged thereby, may present their petition to the Court of Quarter Sessions for the appointment of viewers to ascertain and assess such damages. The proceedings upon said petition and by the viewers shall be governed by existing laws relating to the ascertainment and assessment of damages for opening public highways; and the damages, when ascertained, shall be certified by the State highway commissioner to the Auditor General, who shall pay the amount thereof by warrant drawn on the state treasurer." It is argued that because this section was not drawn in the precise language which had been used in the Act of 1907, above cited, that the legislature must have intended to introduce a new rule and so revive the right to recover for damages resulting from a change of grade involving no change of location which had been given by the Acts of 1903 and 1905. The reply to this would seem to be that if the legislature had intended to give damages for change of grade, when there was no change of location, they would certainly have used the same language which was employed in the Acts of 1903 and 1905. That the legislature was not intending to adopt a general policy to allow damages for any possible injury is indicated by the 32d section of the statute, which makes provision for the ascertainment and payment of damages in the reconstruction of State-aid highways and provides only for compensation for the taking of land to alter the location of a State-aid highway. This statute deals both with State highways and State-aid highways, the first twenty-two sections dealing with the former and the following sections dealing with the latter. The 32d

section is practically copied from the Act of 1907 and under its provisions it cannot be seriously contended that the owner of abutting property could recover damages resulting from a change of grade of the road when no change of location was involved. The learned judge of the court below seems to have given great weight to the fact that the legislature had not used precisely the same language in the sixteenth section of the present statute that it had used in the Act of 1907. But this is to lose sight of the principle that there can be no recovery for a change of grade of a State or township road, when there is no change of location, in the absence of a statute giving the right either by express words or necessary implication. The language of this sixteenth section is no broader and does not indicate any more liberal spirit than the language of the seventh Section of the Act of 1836, above quoted, yet it is definitely settled that there never could be a recovery, under the Act of 1836, for a mere change of grade which involved no change of location.

It is to be observed that the legislature certainly did not intend to give the right to compensation for any and every injury that might result to property from the reconstruction of the State highways, if this had been their intention they certainly would not have introduced into this section the limitation of the right to those cases "wherein a change of existing lines and location is necessary." If these words had been left out, it might with some show of reason, have been then argued that it was the legislative intention that all damages, however remote, should be paid by the State. This statute is part of a general system of which the Act of 1836 is the foundation. The general system of legislation upon the subject-matter may be taken into view, to aid the construction of this statute: Neeld's Road, 1 Pa. 353; Sharett's Road, 8 Pa. 92; Howell v. Morrisville Boro., 212 Pa. 349. The argument on behalf of the appellees is to the effect that "a change of existing lines and lo-

85, (1919).]          Opinion of the Court.

cation" embraced a change of grade although there may be no change in the ground over which the road is located; that a change of grade lines is a change of lines within the meaning of the statute. We are of opinion that this contention is not well founded. The statute contains no evidence that the words "existing lines" are used in a technical sense. The line of a road is generally accepted as having reference to its location. The word is so used in the 8th section above quoted: "The commissioner is authorized to diverge from the line or route of same as herein described"; but in the description of route 72 there is no reference whatever to grade, it is a line extending from point to point. We have many statutes dealing with roads and streets in which the word "lines" is used in a sense manifestly indicating the boundary lines of the street and in many such statutes the words "grade" and "lines" are used as clearly indicating different things. The Act of June 19, 1901, entitled "An Act to regulate and define the boundary lines of public roads" presents a striking illustration of what is generally understood to be the lines of a road. When viewers lay out a public road they give the monuments, courses and distances, the line thus defined is the middle line of the road, if the report of viewers is approved and the width fixed the side lines of the road are equally distant from the middle line as reported by the viewers. The roadbed, or track thereof traveled by the public, may not at first occupy the entire width of the road, but if it is located within the lines of the road as originally laid out, such lines shall be and remain the boundary lines of such road, unless the location of such road has been or may be changed by due process of law. The word "and" as used in the phrase "existing lines and location" must be taken to be used in the conjunctive sense. The "lines" are such as have relation to the location and a shifting of the location will necessarily change the lines. The lines mark the boundaries of the location. The facts in this case are entirely different

from those which were presented in Allison v. Bigelow, 68 Pa. Superior Ct. 219. In that case there was a clear divergence from the old route of the road, an actual change of lines and location, thus bringing it clearly within the language of the statute.

There is probably no change of an existing highway or of any other established order of things that does not to some extent cause practical inconvenience, and in that sense injury, to those who have adapted themselves to the previous conditions. If the construction given by the court below to the sixteenth section of the statute is to be sustained then any damage likely to result to abutting property from the reconstruction of a State highway would entitle a property owner to recover. That this broad interpretation of the statute cannot be sustained must be accepted as settled by the decision of the Supreme Court in Saeger v. Commonwealth, 258 Pa. 239. In that case the highway commissioner had changed the location of a road, under the authority conferred by the Act of May 31, 1911, and Saeger, who owned property upon the old road, sought to recover damages, but it was held that even if the portion of the road upon which his farm abutted was vacated the statute did not warrant a recovery of damages for injuries to the property. There having been, in this case, no change of the existing lines and location of the road, the statute did not give a remedy for any injury which the appellees may have suffered. The learned judge of the court below fell into error in sustaining the exceptions to the conclusions of law in the first report of the viewers, and in overruling the exceptions of the Commonwealth and finally confirming the second report of viewers.

The order and judgment of the court below is reversed and the petition for the appointment of viewers is dismissed at the costs of the appellees.