## Mensch v. Columbia County.

*Road law—Damages—Assessment—Board of viewers—Appeals—Courts—Jurisdiction—Quarter Sessions—Common Pleas—Appeal before final confirmation—Acts of April 15, 1891, and May 26, 1891.*

1. The Acts of April 15, 1891, P. L. 17, and May 26, 1891, P. L. 116, expressly provide the right of appeal from the Court of Quarter Sessions to the Court of Common Pleas where viewers appointed by the Quarter Sessions have assessed damages for the opening, widening or changing of grade of any street, road or highway.

2. The provisions of the two above mentioned acts have been saved from repeal and continue in force as the existing law of the Commonwealth under the Sproul Act of May 31, 1911, P. L. 468, and its amendments, including the Act of April 6, 1921, P. L. 107.

3. The right of appeal so provided may be exercised by the party aggrieved before final confirmation by the court of the award of the viewers.

Appeal from Quarter Sessions upon award of viewers. C. P. Columbia Co., Feb. T., 1923, No. 58.

*L. C. Mensch* and *H. S. Hemingway,* for plaintiff.

*H. Montgomery Smith,* for defendant, appellee.

POTTER, P. J., 17th judicial district, specially presiding, June 8, 1923.—This litigation arises by reason of the rebuilding and reconstruction of the State highway leading from Danville to Bloomsburg, being Route No. 3, as designated by the Act of May 31, 1911, P. L. 468. Upon the petition of the plaintiff land owner three viewers were appointed to assess his damages, if any, who reported that, in their judgment, he had sustained damages in the sum of $4500. As to what were the items of damage, or how the viewers arrived at the amount of $4500, does not enter into the matters in controversy at this time.

The report of the viewers was presented to the Court of Quarter Sessions of Columbia County on Dec. 4, 1922, and on that day were confirmed *nisi.* On Feb. 5, 1923, this report was again presented to the same court and was on that day confirmed absolute, an appeal by the Commissioners of Columbia County from No. 11, December Sessions, 1922, of the Court of Quarter Sessions having been taken out and filed in the Court of Common Pleas, as of No. 58, February Term, 1923, on Jan. 2, 1923.

On Feb. 5, 1923, a rule was taken out by the plaintiff land owner on the Commissioners of Columbia County to show cause why the appeal should not be quashed, which means that the plaintiff is satisfied with the award of the viewers, while the Commissioners of Columbia County are not, and it is this rule we have before us for disposition.

Two reasons are set out as tending to show why this appeal should be quashed, the first one being as follows: "Because no appeal lies to the Court of Common Pleas from the award of viewers filed in the Court of Quarter Sessions in this proceeding, and the Court of Common Pleas is without jurisdiction to entertain such appeal."

If that statement is correct, the appeal must be quashed. Taking a retrospective view of the acts of assembly relating to the construction and improvement of the highways by the State, our attention is first directed to the Act of April 15, 1903, § 20, P. L. 188, which provides as follows: "The Commonwealth of Pennsylvania shall not be liable to any person or corporation for damages arising from the rebuilding or improvement of any highway under this act, nor shall the State engage to keep such highway in repair after the

same shall have been rebuilt or improved, except to extend the aid in maintenance herein provided. In case any person or persons or corporations shall sustain any damage by any change in grade, or by the taking of land to alter the location of any highway which may be improved under this act, and the county commissioners and the parties so injured cannot agree on the amount of damages sustained, such persons or corporations may present their petition to the Court of Quarter Sessions for the appointment of viewers to ascertain and assess such damage; *the proceedings upon which said petition and by the viewers shall be governed by the laws relating to the assessment of damages for opening public highways*, and such damages, when ascertained, shall be paid by the respective counties, and afterward apportioned by the Commissioner of Highways according to the provisions of section 7."

Then we have the Act of May 1, 1905, § 16, P. L. 318, which is a re-enactment of section 20 of the Act of 1903, above quoted.

The next expression of the legislature on the question is by the Act of June 8, 1907, § 3, P. L. 505, 510, which amends section 20 of the Act of 1903 by omitting the words "by any change in grade," which amendment has no bearing on the question before us.

Next we have the Act of May 31, 1911, P. L. 468, known as the Sproul Act, which expressly repeals the three acts before mentioned, the part of section 16 which relates to the matters herein involved being as follows: . . . "The proceedings upon said petition and by the viewers shall be governed by existing laws relating to the ascertainment and assessment of damages for opening public highways."

Next we have the Act of July 18, 1917, P. L. 1040, which relates to counties having a population of less than 800,000, the latter part of section 1 of which is an exact re-enactment of that part of the Act of 1911 above quoted.

The next and last we have on this question is the Act of April 6, 1921, § 2, P. L. 107, which repeals the Act of 1917 and amends the Act of 1911, the latter part of section 16, which only is material to this issue, and is as follows: "The proceeding upon said petition and by the viewers shall be governed by existing laws relating to the ascertainment and assessment of damages for opening highways, and such damages, when ascertained, shall be paid by the county in which the State highway is located."

It is very noticeable that all through these acts there is provided that the proceedings upon the petition and by the viewers shall be governed by existing laws relating to the ascertainment and assessment of damages for opening highways. The question which confronts us is, What are the existing laws?

The Act of 1836 appears to be the root from which subsequent acts spring relative to roads and highways, and the Act of May 31, 1911, P. L. 468, is a part of the general system of which the Act of 1836 is the foundation: State Highway Route No. 72, 71 Pa. Superior Ct. 85, which is affirmed in 265 Pa. 369.

Then we have the Act of April 15, 1891, § 1, P. L. 17, which provides as follows: "In *all* cases where a jury of view, review or re-review, appointed by any Court of Quarter Sessions in this Commonwealth, has or shall hereafter assess damages for the laying out, widening, grading, opening or changing the lines or grades of *any* public street, road or alley in this Commonwealth, the county commissioners of the proper county, or the city or other municipal corporation, required to pay the damages, or any owner or tenant of property through which said public street, road or alley has been or shall be laid out, widened, graded, opened or changed, or which is affected by the change of grades, shall have the right to appeal to the Court of Common Pleas of the

proper county from the decree of the Court of Quarter Sessions confirming the award of such jury for the determination of the question of damages by a jury according to the course of the common law, provided the appeal be taken within thirty days after the final confirmation of the report of said jury (provided that notice be given to the commissioners of the proper county or their clerk of the time and place of holding such view)."

Section 2 prescribes the mode of taking out the appeal, and section 3 repeals all other acts or parts of acts inconsistent with it.

We also have further expression of the legislative mind on this subject by the Act of May 26, 1891, § 1, P. L. 116, which is as follows: "Whenever *any* report of viewers, appointed by any Court of Quarter Sessions to assess damages for the opening, widening or change of grade of *any* street, road or highway, shall be confirmed by the Court of Quarter Sessions to which report is made, an appeal may be taken from the said Court of Quarter Sessions by *any* party aggrieved by the said decree of confirmation to the Court of Common Pleas of said county for a trial of the question of damages by jury, according to the course of the common law, within thirty days from the entry of said decree of confirmation by the Court of Quarter Sessions, and not afterward."

Section 2 prescribes the mode of appeal, and section 3 repeals all acts or parts of acts inconsistent with it.

These two Acts of 1891 just cited are in full force to-day, and they both embrace *any* reports of viewers, and they both provide for appeals from the Court of Quarter Sessions to the Court of Common Pleas. The Act of April 15, 1891, P. L. 17, expressly provides for an appeal by county commissioners, and the Act of May 26, 1891, P. L. 116, provides for an appeal to the Common Pleas by any party aggrieved.

So that when the Act of 1911 provides that "the proceedings upon said petition and by the viewers shall be governed by existing laws relating to the ascertainment and assessment of damages for opening public roads and highways," it must necessarily refer to such acts as are in force at the time of its passage, which were the two Acts of 1891 referred to, and which are existing laws at this date. If that be true, then the appeal taken out from the Court of Quarter Sessions to the Court of Common Pleas by the county commissioners will lie: Kohler *v.* Butler County, 31 Pa. Superior Ct. 305.

In fact, the writer of this opinion, during his twenty-seven years' experience as a practitioner at the bar and on the bench, has never before heard or seen that an appeal like the present one would not lie. It has been the universal practice to appeal from the Quarter Sessions to the Common Pleas in all cases affecting the public roads or highways. We have never before heard it controverted, and we are of the opinion an appeal will lie. We fail to see just how an appellant's right to a jury trial can be taken away from him when his land is taken without his consent, and, conversely, we fail to see how a trial by a jury can be taken away from the paymaster, whether it be an individual or a county.

The latest expression on this question from the appellate courts is found in the case of Allison *v.* Bigelow, 68 Pa. Superior Ct. 219. In this case the State took some of the plaintiff's land in improving a State highway. Apparently, heavier damages were awarded the plaintiff than the State of Pennsylvania thought were proper, and the State, by its Highway Commissioner, took out an appeal from the Quarter Sessions of Mercer County to the Common Pleas. The case was tried before a jury, which resulted in a verdict of $1000 for the plaintiff. The Commonwealth appealed, and the judgment was affirmed, the

case having first been certified from the Quarter Sessions to the Common Pleas for trial. If the State can appeal from the Quarter Sessions to the Common Pleas, why can't a county? The two cases are identical, and since an appeal was allowed in the one, it should also be allowed in the other.

The case of Prager v. Armstrong County, 48 Pa. Superior Ct. 140, is cited and relied upon by the plaintiff. We feel confident that some question other than the one presented in the case at bar must have moved the Superior Court to render that decision. The Act of June 13, 1874, P. L. 283, must have been in mind when that decision was rendered, as well as section 8 of article XVI of the Constitution of this State. The case has never been referred to in any subsequent decision by either of the appellate courts. Our view of the case quite coincides with that of Judge Weand in the caes of Corson v. Montgomery County, 28 Montg. Co. Law Repr. 85, and we cite his opinion in that case with approval.

We might also add that under the provisions of the Act of June 23, 1911, P. L. 1123, providing for the appointment of a county board of viewers, that section 5 of the act extends the right of appeal from the action of the board as under existing laws.

In this case there is also an agreement between counsel for the allowance of the appeal, signed by them. It is no more than fair to presume that when counsel signed this agreement, they were acting within and by the consent of their respective clients, and the agreement should be binding upon them.

The second reason in support of the motion to quash the appeal is as follows: "Because, if the right of appeal to the Court of Common Pleas from the award of viewers filed in the Court of Quarter Sessions in this proceeding does exist, the appeal is premature, in that said appeal was filed and taken before the report of viewers was 'confirmed absolute.'"

The practice heretofore has been to confirm the report nisi on the first day of the term following the view. The report then was permitted to lie over till the following term, thus giving any one interested ample time to file exceptions. If no exceptions were then filed, it was confirmed absolutely. In this case the nisi confirmation was on Dec. 4, 1922. The absolute confirmation was on Feb. 5, 1923, at the following term. The appeal was taken out and filed on Jan. 2, 1923, nearly a month before the absolute confirmation. The Act of April 15, 1891, P. L. 17, provides that the appeal shall be taken within thirty days after final confirmation. The Act of May 26, 1891, P. L. 116, provides that it shall be taken within thirty days after the entry of final decree of confirmation, and not afterwards. We know of no law preventing an appeal from being taken before final confirmation. In this case the appeal was taken out and nearly a month afterwards the final decree of confirmation was made. In view of our disposition of the first question involved, we feel that the appeal should be allowed to stand. To do otherwise would be to consume time, with no benefit to either party.

In regard to the Act of May 10, 1921, P. L. 428, we feel like saying that this act has made some change in the practice in reference to the filing and confirmation of the reports of viewers. Now they do not lie over till the next term, but they must be finally confirmed thirty days after being filed, unless exceptions are filed or unless an appeal has been taken in those thirty days. And, under this act, an appeal can be taken before final confirmation.

And now, to wit, June 8, 1923, the motion to quash the appeal is dismissed, and the Clerk of the Court of Quarter Sessions is directed to certify the appeal to the Court of Common Pleas for trial.

From Charles P. Ulrich, Selins Grove, Pa.